[Civ. No. 3016. First Appellate District, Division One.—October 20, 1919.]

## J. ELLSWORTH COOMBS, et al., Appellants, v. B. L. REYNOLDS et al., Respondents.

[1] WATERS AND WATER RIGHTS—CULTIVATION OF LANDS—INJURY TO LOWER PROPRIETOR—DISCHARGE OF SURFACE WATERS—LIABILITY. One has a right to utilize the land which he owns, and if an increased flow of water, or of surface water, from his land to a lower piece of land comes from a proper use of his own land, from the cultivation of the same in a proper and useful manner, the lower land owner cannot complain of the increased flow caused by such use and ordinary cultivation or improvement of his land.

[2] ID.—RIGHT TO INTENTIONALLY DAMAGE NEIGHBOR.—While a man has a right to improve and cultivate his land, this does not give the right to intentionally damage his neighbor.

[3] ID.—LIABILITY FOR NEGLIGENT CULTIVATION.—Every owner of land has a right to cultivate it to make use of it for the purposes for which it is best adapted, and, in the course of such use, to plow and cultivate such land, and he is only responsible for injuries falling from such cultivation in the event that such cultivation is performed in a negligent manner.

[4] ID.—RULE OF CIVIL LAW.—While the civil law respecting surface or storm waters, to which the courts of this state are committed, protected a lower proprietor against an upper owner from injuries resulting from sending surface waters down to the lower owner in a manner different from their natural flow, there was one act of man excepted, and that was the tilling of the fields in the natural way.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

Davis, Kemp & Post for Appellants.

H. N. Wells, R. P. Jennings, Frank P. Belcher and J. A. Visel for Respondents.

BARDIN, J., *pro tem.*—The action was brought to recover damages claimed to have been suffered by the plaintiffs by reason of the alleged diversion by the defendants of certain surface storm waters from the course of their

natural discharge and flow, so that they were concentrated upon the land of the plaintiffs in an unnatural manner and quantity.

In support of this appeal, it is the claim of the appellants that the court committed error in its charge to the jury: (1) In respect to the law as to the liability of an upper proprietor of lands for injuries suffered by a lower proprietor in respect to the discharge of surface storm waters upon the lands of the latter; and (2) in respect to the charge of the court in definition of an act of God as applied to the special defense pleaded by the defendants in bar of recovery.

Counsel for the respective parties are in substantial agreement as to the facts of the case. The defendants Reynolds and Leisure were the upper owners of separate portions of a large tract of land lying eastward from the top of a bluff along the east side of what is known as San Dimas Wash, in the county of Los Angeles, California. The plaintiffs at the same time were the owners of a smaller tract of land of considerably less elevation planted to orange and lemon trees, the easterly boundary of which extended along the top of the bluff referred to and contiguous to the lands of one Bright and of defendant Damerel (as to the latter of whom a motion for nonsuit was granted, of which no complaint is here made), but not contiguous to the lands of Leisure and Reynolds, the land of one Bright intervening.

From the evidence adduced at the trial it appears that the natural drainage of storm waters passing from the lands of Reynolds and Leisure would not ordinarily be discharged upon the lands of the defendants, but would pass through natural depressions easterly from defendant's lands, and eventually pass into fixed watercourses. The surface of defendants' lands is practically in a plane so far as could be readily discovered by the eye, with a gentle slope to the southwest. These lands were also planted to fruit trees and were worked as one tract of land, notwithstanding they were in separate ownership. A short time before the plaintiffs suffered the injuries complained of the defendant Reynolds had been engaged in plowing these lands, the furrows running from east to west. About February 20, 1914, a storm of great and unprecedented violence

visited the locality referred to, attended by an extremely heavy precipitation of rain. The accumulated storm waters gathered in great volume upon the lands of defendants, and in seeking lower levels seem to have followed, to a considerable extent, certain dead furrows caused by the cultivation referred to, so that a large amount of this surface storm water was diverted westerly across the lands of defendants Reynolds and Leisure, thereby contributing to the volume of other storm waters which passed over the lands of Bright and eventually broke over the bluff above plaintiffs' lands, resulting in the injuries complained of.

In response to one of the special issues submitted to the jury, it was found that the conduct of the defendants in the method used by them for the cultivation and improvement of their lands was not negligent. The general verdict was also for the defendants.

The case seems not to have been tried upon the theory that there was a willful diversion or interference with the surface waters referred to, in the sense that any act of the defendants in the cultivation of their soil was done with the object of causing any storm water which might thereafter accumulate to depart from the course of its usual flow, and particularly to be deflected in such a manner as to likely pass in unusual or unnatural manner upon the lands of the plaintiffs. Appellants' fundamental contention finds apt expression in the following quotation from their briefs: "It is true, of course, that the defendants had a right to cultivate and use their land, and also had a right to plow their land, but they must see to it at their peril that the use and cultivation and plowing of the land results in no injury to another."

The respondents' claim, very briefly stated, is that the admitted right of the defendants to till and cultivate their lands is qualified only by the right to exercise such acts of husbandry in a careful and prudent manner.

The learned trial judge in his charge to the jury prepared lengthy and very well-considered instructions covering the question of the liability of an upper owner to a lower owner where injury is suffered by the lower owner by reason of the unnatural flow of surface storm waters brought about without negligence and in the course of usual methods of farming or other agricultural operations, and

unattended by any acts amounting to willful diversion, concentration, or interference with the course of the flow of such waters. These instructions are claimed by the appellants to constitute error and to justify a reversal of the case. We cannot agree with counsel in the behalf claimed.

Among the instructions complained of, but which concisely express the principle which seems to us proper to apply to this controversy, are the following:

[1] "It is also true that one has a right to utilize the land which he owns, and if an increased flow of water, or of surface water, from his land to a lower piece of land comes from a proper use of his own land, from the cultivation of the same in a proper and useful manner, the lower land owner cannot complain of the increased flow caused by such use and ordinary cultivation or improvement of his land. It will be observed that any use of the land which is owned by the defendants herein, which might tend to increase the flow of water upon the land of the plaintiff, the mere fact that it does in some degree increase the flow does not of itself give the plaintiff the right to recover in this case, but you will have then to consider the nature of the improvements, the character of the cultivation, and determine after consideration thereof the question of damage under the general instructions as given you by the court.

"The right to cultivate and improve his land carries with it the right to plow the land, so that the mere fact that the defendants in this case plowed their land would not give any right of recovery to the plaintiff. I shall submit to you, however, in this case, this question, whether or not in such cultivation the defendants were guilty of such negligence, or negligent conduct, that is to say, so negligently improved their land that they caused damage by storm water, which a man of ordinary prudence might have anticipated would have been caused by such conduct. [2] The court instructs you that while a man has a right to improve and cultivate his land, this does not give the right to intentionally damage his neighbor. For illustration in this case, assuming an extreme condition that dead furrows were plowed all over defendants' land and all pointing to the break in question, so that the inevitable effect of such plowing would be to concentrate the water at the point in question; if this sort of course was followed, done with

the express intention or for the express purpose of damage to the plaintiff's land, then he would have a right to recover.

[3] "Returning then to the proposition, the court again states to you that every owner of land has a right to cultivate it to make use of it for the purposes for which it is best adapted, and, in the course of such use, to plow and cultivate such land. Such owner would only be responsible for injuries falling from such cultivation in the event that such cultivation was performed in a negligent manner."

[4] The courts of this state are committed to the rule of the civil law respecting the law of surface or storm waters. (*McDaniel* v. *Cummings,* 83 Cal. 515, [8 L. R. A. 575, 23 Pac. 795]; *Los Angeles C. Assn.* v. *Los Angeles,* 103 Cal. 461, [37 Pac. 375]; *Wood* v. *Moulton,* 146 Cal. 317, [80 Pac. 92].)

While the civil law protected a lower proprietor against an upper owner from injuries resulting from sending surface waters down to the lower owner in a manner different from their natural flow, yet "there was, however, one act of man excepted . . . and that was the tilling of the fields in the natural way." (Kinney on Irrigation and Water Rights, 2d ed., sec. 560; *Martin* v. *Jett,* 12 La. 501, [32 Am. Dec. 120], and case note.)

In *Livingston* v. *McDonald,* 21 Iowa, 160, [89 Am. Dec. 563], the court in discussing a question akin to the present one, said: "The very case now before the court was, as it appears to us, met and provided for by the laws of Justinian. The distinction seems to be between injuries occasioned by strictly agricultural operations, and those occasioned by works designed to reclaim or improve the land. In favor of agriculture, injuries by flowing water done to a neighbor, as the result of ordinary farming operations (as with the plow in raising crops), were not actionable. But, if one, with the design and purpose of reclaiming and improving his land, makes ditches upon it and thus, by an increased flow of water, or otherwise, causes an actual injury to the lower owner, he is liable therefor."

That there are exceptions to the general rule that the upper proprietor may not increase or change the burden of

the lower proprietor relative to the duty of receiving surface storm water is recognized, although stated by way of *dictum* in *Board of Trustees etc.* v. *Rodley*, 38 Cal. App. 563, [177 Pac. 175], where it is said: "The principle does not apply to a gradual increase in drainage that may be caused by the cultivation of the soil according to the usual method."

To fail to approve the instructions complained of upon this particular subject would be to condemn to sterility vast acreages of agricultural lands situate in the state, where storms of violence occasionally attend, and where, because of the varying elevations of neighboring tracts, the run-off of storm water is often torrential in character, causing temporary channels to be rapidly developed in unusual places and manner, and bringing about unexpected washes, and consequent deposits of both water and debris and which the most careful and prudent husbandman could neither anticipate nor make adequate provision for.

Several California cases have been called to our attention which it is claimed establish the inflexible rule that the upper owner is liable in damages for *any* unnatural diversion or concentration of storm waters which result in injury to the lower owner. The cases cited do not meet the situation presented by the record now before us, but relate to or contemplate cases where the injury complained of has been produced by affirmative acts of the party at fault, brought about by a deliberate interference with the natural flow of surface waters, usually by the construction of drainage systems, dams, dikes, ditches, and kindred obstructions and works. The fundamental question involved in this case seems not to have before been directly passed on by any of the appellate courts of this state.

The instructions adverted to were not believed by the trial judge to be hostile to the line of decisions which finds concise expression in the case of *Heier* v. *Krull*, 160 Cal. 441, [117 Pac. 530], and we share in that belief. Considered with the other harmonious instructions given upon the same subject, they form a lucid exposition of just and equitable principles for the determination of the issues before the lower court.

The views we have expressed upon this subject render it unnecessary to determine whether or not the court erred in

its charge to the jury upon the subject of the special defense that the alleged injury complained of was brought about by the act of God.

The judgment is affirmed.

Richards, J., and Waste, P. J., concurred.