Argued December 22, 1921, affirmed February 28, 1922.

# HARBISON ET UX. *v.* CITY OF HILLSBORO.

### (204 Pac. 613.)

**Trial—No Error in Refusal of Instructions Included in Charge Given.**

1. In an action against a city for damages to land from obstruction of a drain with sewage on lands below, where the court instructed the jury that the ditch was constructed not in the natural course of drainage by permission of the lower owner without payment of the consideration or without material benefit to him, plaintiff's use thereof would be a mere revocable license, and the city under authority of the lower owner could deposit sewage in the ditch on his land without liability to plaintiffs, defendant cannot complain of the court's refusal to instruct the jury that plaintiffs could not recover damages resulting from an act committed on lower lands, unless they or their predecessors in title paid some consideration, or did some act of material benefit to the owner thereof before the city acquired from him the right to use the ditch; the substance of the requested instructions being included in the charge given.

**Municipal Corporations—City's Liability for Damage from Discharge · of Sewage cannot be Shifted to Third Person Who has Contracted to Maintain Proper Drainage.**

2. A city, having constructed a sewer as authorized by its charter (Hillsboro Charter, § 36), it was bound to use reasonable diligence and care to keep it and the drain in good repair, and it could not shift liability by contracting with a third person to maintain the drain.

**Municipal Corporations—Liable for Permitting Sewage to Flow or Percolate on to Abutting Property.**

3. A city is liable for wrongfully permitting water to flow or percolate from sewers on to abutting property, whether discharged directly thereon or at such a point that it must necessarily be carried there by a conduit or gravitation.

**Municipal Corporations—City's Contract for Use of Ditch Held not to Terminate Plaintiff's Rights.**

4. Plaintiff's land having been damaged by sewage which obstructed a ditch on lands of a third person through which plaintiff's land was drained, plaintiff's right in the drain, even if a revocable license, was not terminated so as to prevent recovery of damage from the city, by its contract with such third person, which contemplated plaintiff's continued use of the ditch and stipulated that the city should enlarge the ditch if necessary.

**Municipal Corporations—In Action for Damage from Obstruction of Ditch by Sewage, Motion for Directed Verdict Properly Denied.**

5. In an action against a city for damages to land from obstruction of a drain by sewage, defendant's requests for a nonsuit and a directed verdict *held* properly refused.

Waters and Watercourses — Surface Waters may be Discharged by
Natural Course on to Lands of Another.

6. A land owner may cause surface waters to flow by natural
course to adjoining lands, but must not collect such waters in a
reservoir and then discharge the same on to the land of another to
his injury.

Waters and Watercourses—Land Owner may by Ditch Cause Sur-
.face Water in Natural Depression to Flow in Natural Course
of Drainage on to Adjoining Lands.

7. One, on whose land surface water collects in a natural basin
or depression, has the legal right to rid his land thereof by caus-
ing the water, by means of a ditch which may be reasonably neces-
sary, to flow by the natural course of drainage on to adjoining
lands, though it may from thence, by natural or artificial means for ·
which he is not responsible, reach and spread out over the lands of
others.

Municipal Corporations — Right to Use Watercourse for Surface
Drainage Does not Give Right to Drain Sewage Therein.

8. The right to use a watercourse for surface drainage does not
give a city the right to drain sewage therein.

Municipal Corporations—Governed by Same Rules as Natural Per-
sons With Respect to Surface Waters.

9. Cities are governed by the same rules as natural persons with
respect to drainage of surface waters, except that they may resort
to the right of eminent domain.

Waters and Watercourses — Owner Protecting Land from Surface
Water cannot do Anything Inconsistent With Due Exercise of
Dominion Over His Own Land.

10. An owner in protecting his land from surface water may
not do anything inconsistent with the due exercise of dominion over
his own land.

Waters and Watercourses—Owner may Turn Surface Water on Land
of Adjacent Owner in Such Quantities as Would Naturally
Drain Thereon.

11. In view of Sections 9553, 9560, Or. L., authorizing applica-
tion to the County Court for privilege to construct a drain over
adjacent lands, where the owners thereof object, a land owner may
artificially turn on the land of an adjacent owner surface water
in such quantities as would naturally drain in that direction, even
though the flow thereof on the lower tract is accelerated; due re-
gard being observed for the interest of the adjacent owner so as to
cause no unreasonable inconvenience.

Municipal Corporations—Instruction Held to Fairly Submit Questions
in Action for Damages to Land from Obstruction of Drain by
Sewage.

12. In an action against a city for damages from the obstruction
of a drain by sewage deposited therein on lands below by agree-
ment with the owner who with plaintiffs and owners of other
adjoining properties constructed the drain, which was used for the

mutual benefit of all, the charge *held* to fully and fairly submit the questions involved in accordance with the law.

**Municipal Corporations—City Connecting Sewer With Private Drain and Overtaxing Capacity Held Liable for Damage to Upper Lands.**

13. A city which connected its sewer with a private drain, overtaxing its capacity, and allowed material to accumulate and obstruct the flow of water, causing it to flow back on private property above, is liable to the owners thereof for the damage done.

From Washington: GEO. R. BAGLEY, Judge.

Department 2.

This is an action for damages caused by the City of Hillsboro depositing sewage and waste water from its sewers into, and obstructing the flow of water in, a drainage ditch which drains plaintiffs' land. The cause was tried before the court and a jury, resulting in a verdict for plaintiffs. From a consequent judgment defendant appeals.

The main facts disclosed by the record are substantially as follows: Plaintiffs have been the owners and in possession of the real property described in the complaint, and designated throughout the testimony as ''Fair Acres'' since September, 1911. The portion of plaintiff's land, the injury to which caused this action, lies immediately south of the corporate limits of the City of Hillsboro. It consists of rich river bottom and beaver-dam land, especially adapted to the growing of vegetables, and is very valuable. Immediately east of the land in question is a tract of land designated as the ''Luce place,'' immediately west the ''Crandall place,'' and immediately west of the Crandall place is a tract of land known as the ''Corrieri or Thorne place.'' South of the Corrieri or Thorne tract are the lands of Jones and J. C. Hare. The Hare tract borders on the Tualatin River, and Fair Acres is approximately one-half mile from the

river.    Near the center, or slightly to the west of the
center, of Fair Acres, is a ridge or divide.    The sur-
face waters accumulating thereon east of the divide
flow down across the Luce place to the river, and the
waters accumulating west of the divide flow through
the ditch in question to the river across the lands of
Crandall, Corrieri, Jones and Hare.    A large por-
tion of the various tracts above referred to, overflow
from the Tualatin River during a portion of the
winter season, and by reason of the overflow and sur-
face waters, the lands must be drained in order to
raise crops thereon.

In 1903, C. K. Henry, who was then the owner of
Fair Acres, ran a line of levels from the divide down
across the lands of the lower proprietors, to the
Tualatin River, and thereafter, in company with
Crandall, and Thorne, the then owner of the Corrieri
tract, constructed a ditch as follows: South on the
Henry west line from the ditch constructed east and
west on the Henry land, thence southwesterly across
the Crandall and Thorne lands to the county road,
and connected the same with a ditch extending along
the county road and southeasterly over the lands of
Mr. Hare to the Tualatin River.    Each owner paid
the cost of constructing the ditch on his individual
land, and, during a subsequent year, all joined in
the expense of deepening and clearing the outlet along
the road and over the Hare land.    The cost of con-
struction paid by Henry was $24; Crandall $21 and
Thorne $15.    This ditch followed the lines of an old
ditch which had been used by the parties named for
many years.    Henry sold Fair Acres to one Houston,
who in 1911, conveyed the same to the plaintiffs.
During the year 1911, the city constructed a storm
sewer covering a considerable portion of the city,
with the outlet at the north boundary of the Corrieri

land. At the same time, the city constructed a sanitary sewer system covering practically the same area as the storm sewer, the outlet being a septic disposal system constructed on land purchased from Corrieri near his north line and immediately west of the storm sewer outlet. The sewers were not completed and put into use until about the end of 1911. During the year 1912, and until some time early in 1913, the city used a horse-drawn broom with which to clean its streets. Connection with the sanitary sewer was not made compulsory until 1913. In 1913, the city purchased a street flusher and from that time on used the flusher in cleaning its streets. Since the construction of the Harbison, Crandall, Corrieri ditch and up to the time the City of Hillsboro caused to be emptied therein the overflow of both storm and sanitary sewer systems, the ditch fully drained that portion of Fair Acres lying west of the divide. Large crops of onions were grown thereon, and as disclosed by the testimony, three acres of the land which has been made unfit for cultivation by the acts of the City of Hillsboro, would produce a bountiful crop. As a result of the sewer overflow where the outlet of the sewer systems intersects the Harbison, Crandall, Corrieri ditch, large quantities of filth and debris constantly accumulated which checked the flow of water from Fair Acres, and caused it to back up and flow over the land. The plaintiffs were thereby deprived of the use of the most valuable portion of their farm, and such deprivation of use has been continuous ever since the overflow of the sewer system was poured into the ditch constructed by the farmers. The cost of maintaining the Harbison, Crandall, Corrieri ditch and keeping the same clean until the time of the alleged intrusion of the city was sustained and paid by

Corrieri, as successor in title to Thorne, Harbison as successor in title to Henry, and Crandall.

Corrieri conveyed the land to the city for a site for its septic tank in May, 1911, together with the right to overflow the water from the tank upon his tract of land, and to discharge the water and drain over his land and the right of way for an open ditch from its septic tank across his land to "and connecting with the present open ditch," Corrieri was to have the right to use for irrigation the water from the septic tank and from the storm sewer or drain. The city was to construct a ditch to connect with "the present open ditch." The written agreement further provided:

"And if, by reason of the overflow from said septic tank, the present ditch on said land is not of sufficient size to carry said additional water without injury to the lands of the parties of the first part, (Corrieris) then the party of the second part (city) will enlarge said ditch at its own expense, making the same large enough to carry said surplus water from said tank, and parties of the first part are to keep said ditch cleaned out and in repair at their own expense, after the same is put into condition by party of the second part, if any change or enlargement is found necessary."

The city denied responsibility for the damage and alleged that a portion of the plaintiffs' land, by reason of imperfect drainage, had always been unfit for cultivation. It also asserted it had constructed its sewers and deposited its waters on the Corrieri land under a grant from Corrieri and that he was to take and control the same. Plaintiffs, in their initial pleading, alleged that the city connected its sewers with their ditch without enlarging its capacity, or in any way providing for the carrying off of the addi-

tional water and sewage therein. The defendant alleged that the plaintiffs are estopped from asserting that defendant unlawfully deposited water in the ditch and increased the flow without enlarging the capacity for the reason that, during April or May, 1912, the plaintiff, Robert E. Harbison, acting for himself, Lucy E. Harbison, Crandall and Corrieri, represented that the ditch used by them, and the city, and into which the Pacific Coast Condensed Milk Company deposited a large volume of water, was not large enough and of sufficient capacity to take care of the water required to flow therein; represented that the owners of the land would pay one third of the cost of enlarging and maintaining the outlet, being from a point in the road west of the Corrieri land to the river, the defendant pay one third and the Milk Company pay one third; and that the defendant should continue to use the ditch in common with the other parties. The defendant entered into the agreement, paid $33.35, its share of enlarging the outlet, and expended $200 since that time in maintaining it, which sum was more than defendant's share and was practically all the money expended in maintaining the same.

The outlet upon the Corrieri property was clogged up with filth and dirt from the City of Hillsboro, and if the ditch upon the Corrieri place below the outlet of the city ditch was cleaned out, according to the testimony of Mr. Corrieri it would fill up with sediment overnight either from a storm or from the flushing of the city streets. The testimony shows that Harbison did a great deal of work and spent a great deal of time in attempting to keep this ditch cleaned out and open, and that Corrieri spent a considerable amount of time for the same purpose, but that the ditch could not be kept clean and it was a hopeless task.                                                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Benton Bowman,* City Attorney, and *Mr. H. T. Bagley,* with an oral argument by *Mr. Bowman.*

For respondents there was a brief over the name of *Messrs. Hare, McAlear & Peters,* with an oral argument by *Mr. Wm. G. Hare.*

BEAN, J.—At the close of plaintiffs' case the defendant moved for a nonsuit on the ground that there was not sufficient evidence to justify submitting the case to the jury, in that plaintiffs' right to use the ditch and flow waters over the Corrieri lands was but a mere license, subject to such use as might be made by the owner of the Corrieri land and his grantee; that if the use of the ditch or lands of Corrieri by Corrieri, or another by his permission, interfered with plaintiffs' use, such use constituted a revocation of the license in so far as such use interfered with plaintiffs' enjoyment of the privilege; that plaintiffs had not proved a grant or easement; and that the damage, if any, had been caused from surface waters. The motion was denied. At the close of the case defendant asked for a directed verdict for defendant, which was denied.

Practically the same questions were raised by requested instructions by defendant, which read as follows:

No. 3. "Plaintiffs are not entitled to recover damages, if any, from the City of Hillsboro resulting by reason of the surface and spring waters not draining from their land, caused by some act of the defendant committed upon Corrieri lands, unless plaintiffs themselves, or their predecessors, paid to the owner of the Corrieri lands some consideration or did some act in connection with said ditch of material benefit to the owner of the Corrieri lands before the city acquired

a right, if you find it did acquire a right, to use said ditch and overflow the Corrieri lands.''

No. 4. ''Corrieri, as the owner of the land known as the Corrieri tract, had a legal right to permit the City of Hillsboro to use the ditch on his lands and to overflow his lands and to deposit sewage thereon, and if such use by the city of Hillsboro interferes with the drainage of surface and spring waters from the Harbison lands, resulting in damages to the Harbison lands, or crops, plaintiffs cannot complain in this action and cannot recover from the city unless plaintiffs or their predecessors, paid to the owner of the Corrieri lands some consideration for the use of said ditch, or some material benefit resulted to the owner of the Corrieri lands from the ditch constructed by plaintiffs' predecessors, before the city acquired a right to use the ditch and overflow the Corrieri lands.''

No. 12. '' * * If you find that plaintiffs have a right to the use of the ditch on the Corrieri lands, that right would not prevent Corrieri from receiving water and sewage from the City of Hillsboro and overflowing his lands, provided such water and sewage did not interfere with plaintiffs' right in said ditch, but if Corrieri received said water and sewage from the city, and was to control the same, and permitted the same to flow into the ditch of plaintiffs, or in which they had a right, to their injury, Corrieri, and not the city, would be liable.''

The charge given by the court to the jury read in part thus:

''I instruct you that the owner of lands is entitled to have and enjoy for the benefit of his lands, unobstructed, the natural drainage facilities thereof, not only upon his property but upon other property adjoining and contiguous. In other words, an adjoining owner or one owning lands below, across which the natural course or direction of drainage exists naturally, or any other person, has no right to obstruct or hinder the natural drainage so as to injure or damage

the owner of such lands; such right is a natural one and appurtenant to the land. And I wish you to bear this suggestion in mind during all of the instructions I shall give you upon the subject of ditches and drainage.''

After instructing the jury at length the court summarized as follows:

''The City of Hillsboro has no right to deposit upon the lands of Corrieri in said ditch, or contiguous thereto, so it will run into said ditch, sewage from its sewers so as to obstruct the rights of plaintiffs, provided that the owners of said lands upon which such ditch is constructed, constructed the ditch upon the natural course and direction of the drainage of such lands affected by the ditch, or if the ditch was constructed in a direction or course which was not the natural course or direction of the drainage of the lands affected by the ditch but that the ditch was constructed by plaintiffs' predecessor in title under an agreement and by payment of a consideration for the right to, or the owner of the Corrieri lands, at the time of its construction, received some substantial benefit from the construction and maintenance thereof, the defendant would not have the right to use such ditch in such manner as to obstruct the drainage system of the plaintiffs so as to cause them injury or damage; but if constructed not in the natural course of drainage by permission of the owner, without payment of a consideration therefor, or without its construction resulting in a substantial or material benefit to the owner of the lands, it would be a mere license and revocable and not assignable, and it was such that the defendant would have a right, under the authority of the owner of the Corrieri lands, to deposit its sewage thereon and therein without being liable in damages to the plaintiffs; but the plaintiffs would have no right, in this case, to complain of any use made by the City of Hillsboro of the Corrieri lands, or the ditch on and below the same, unless such use interfered with some legal right of the plaintiffs such as

is necessary for you to find existed in plaintiffs under the rules I have given you.''

1. The contents of the charge of the court to the jury which we have quoted discloses that the substance of the requested instructions Nos. 3 and 4, was included in the charge, so that defendant cannot complain in that regard.

2. Request No. 12 would shift the responsibility for the care of the water and sewage from the city sewer, from the municipality to Corrieri for the reason that under certain conditions he agreed to keep the ditch in repair.

The City of Hillsboro is authorized by its charter (Section 36) to raise money for the construction, maintenance and repair of sewers. After the construction of its sewer system, the duty as to the control, use and repair of the system is purely ministerial. The city having assumed the control and management of the sewer and drain, was bound to use reasonable diligence and care to keep such sewer and drain in good repair, and is liable in damages to any property injured by its failure in this respect: 9 R. C. L., p. 670, §§ 62, 63. This corporate duty imposed upon the city cannot be avoided and cast upon Corrieri or anyone else: *Hosford Transp. Co.* v. *Portland*, 70 Or. 366 (141 Pac. 1016). For this reason requested instruction No. 12 was properly refused

3. The attempted arrangement with Corrieri in regard to clearing out the ditch in so far as it affects this case, stands on no different footing than if anyone else had agreed with the city to do such work and failed. The City of Hillsboro is liable for wrongfully permitting water to flow from its sewers upon abutting property, causing damage thereto, or for

damage from sewage which percolates to private property from its sewer. It is immaterial whether the contents of the sewer are discharged directly on the property of an individual, or at such a point that the sewage and other refuse taken along with it must necessarily be carried there by a conduit or gravitation: 9 R. C. L., p. 672, § 64; Joyce, Law of Nuisances, §§ 284–286; *Ulmen* v. *Mount Angel,* 57 Or. 547 (112 Pac. 529, 36 L. R. A. (N. S.) 140); 20 L. R. A. (N. S.) 1050, note; *Spangler* v. *San Francisco,* 84 Cal. 12 (23 Pac. 1091, 18 Am. St. Rep. 158); *Ft. Wayne* v. *Coombs,* 107 Ind. 75 (7 N. E. 743, 57 Am. Rep. 82); *Bates* v. *Westborough,* 151 Mass. 174 (23 N. E. 1070, 7 L. R. A. 156); 61 L. R. A. 701, note; 61 L. R. A. 702, note; *Good* v. *Altoona City,* 162 Pa. St. 493 (29 Atl. 741, 42 Am. St. Rep. 840); 1 L. R. A. 296, note.

4. The main contention of the defendant, city, is that plaintiffs, Harbisons, did not have a permanent right to the ditch over the lands of Crandall, Corrieri and others, but only a revocable license which it claims was terminated by virtue of the grant and agreement of Corrieri.

As we understand the stipulations between Corrieri and wife with the city, they did not contemplate that the use of the ditch leading from Harbison's land over the lands of Crandall and Corrieri by the three owners, should be disturbed, but that the city would enlarge the ditch if necessary, so as to take care of its sewage and water from its sewers.

5. The water drained from the Harbison land is surface water. The testimony tended to show that the company ditch of Harbison, Crandall and Corrieri was constructed by them pursuant to a mutual arrangement for the purpose of draining their respective land into the Tualatin River, and it was used for

and served such purpose to their mutual benefit. Therefore, Thorne, the predecessor of Corrieri in the ownership of the Corrieri tract, and Corrieri received a material benefit by reason of the construction and maintenance of the company ditch. There was also testimony showing that the company ditch was dug along the natural course of drainage from the Harbison land over the other tracts to the river.

Under the instructions the jury was warranted in finding that the license from the owner of the Corrieri land was not revocable, and that the grant from Corrieri to the city did not terminate the right of Harbison to use the drainage ditch over the Corrieri land. There was testimony indicating that prior to the intrusion of city water and sewage this ditch constituted a full, complete and adequate drainage for all that part of Fair Acres alleged in the complaint to have been damaged; that the influx of city water and sewage was the direct and proximate cause of plaintiffs' inability to drain the lands, or to produce crops upon the most fertile portion of their farm; also testimony in support of the allegations of the complaint in other respects. Therefore the requests of defendant for a nonsuit and for a directed verdict were properly refused.

6. Counsel for the defendant invoke the following rule, which we quote from their brief:

"Rights of Owners of Dominant and Servient Estates With Reference to Surface Waters. Common-law Rule. Surface water is to be regarded as a common enemy, and the proprietor of the lower tenement or estate may, if he chooses, obstruct and hinder the flow of such water, and in doing so may turn it back upon and over the lands of others without liability for injury ensuing from such obstruction or diversion."

Counsel for plaintiffs suggest the following civil-law rule announced in *Rehfuss* v. *Weeks,* 93 Or. 25, 32 (182 Pac. 137). It was there stated:

"The requested instruction ignores the rule as to surface water. A portion of the water in question appears to come within such designation. The defendant as a land owner, had the right to turn or expel upon the land of an adjacent owner, surface water that would naturally flow there, and in such quantities as would naturally drain in such direction, without liability for damages: *Whitney* v. *Willamette Ry. Co.,* 23 Or. 188 (31 Pac. 472); *Davis* v. *Fry,* 14 Okl. 340 (78 Pac. 180, 2 Ann. Cas. 193, 69 L. R. A. 460); 5 M. A. L., § 469, p. 354. The owner of upper lands is not prohibited by the rule from cultivating his lands or draining them by artificial ditches, though surface water is thereby precipitated more rapidly upon the lands of the adjacent owner below, provided he does not cause water to flow on such lands which, but for the artificial ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the interests of such adjacent owner: 30 Am. & Eng. Ency. of Law (2 ed.) 337; Angell on Watercourses (6 ed.), p. 122 et seq.; *Anderson* v. *Henderson,* 124 Ill. 164, 170 (16 N. E. 232); *Wood* v. *Moulton,* 146 Cal. 317 (80 Pac. 92)."

7. A land owner has the right to protect his premises from surface waters by causing the same to flow by the natural and necessary course to adjoining lands, subject to the limitation that he cannot rightfully collect surface waters on his premises in a reservoir and then discharge the same on to the land of another to his injury. A person on whose land surface water coming from his own and other lands collects in a natural basin or depression and there remains except in seasons of drought, has the legal right to rid his land of the water by causing the same, by such means as may be reasonably necessary, to

flow in the natural course of drainage on to adjoining
lands, though the water may from thence, by natural
or artificial means for which he is not responsible,
reach and spread out over the lands of others.    In
such a case the land owner effecting the drainage of
his land by means of a ditch is only in the exercise
of the right of every person to defend his premises
against surface water, and for consequential damages
to other land owners the latter have no remedy
against the former: *Shaw* v. *Ward,* 131 Wis. 646 (111
N. W. 671, 11 Ann. Cas. 1139); *Rehfuss* v. *Weeks,* 93
Or. 25 (182 Pac. 137).

8. It would, we think, be difficult to apply the com-
mon-law rule in regard to surface water so as to per-
mit the city to obstruct the drain in question with sew-
age.    Such an act would not improve the Corrieri
tract of land in any way.    The deposit of sewage in
the drain in question and allowing the same to remain
without proper drainage thereof cannot be considered
an improvement in any respect.    The right to use a
watercourse for surface drainage does not give a city
the right to drain sewage therein: *City of Henderson*
v. *Robinson,* 152 Ky. 245, (153 S. W. 224).

9, 10. Different states adopt the different rules as
to drainage of surface water in the improvement of
adjoining tracts of land, as will best suit the prevail-
ing conditions.    In New Hampshire, one of the states
favoring the common-law rule, a land owner may dis-
turb the natural drainage only to the degree necessary
in the reasonable use of his own land, and what is
such reasonable use is ordinarily for the jury to de-
termine under appropriate instructions: Gould on
Waters, p. 539, § 265.    Cities are held to be governed
by the same rules as govern natural persons with re-
spect to the drainage of surface waters, except that
they may resort to the right of eminent domain:

9 R. C. L., p. 684, § 78; Smurr on Farm Drainage, § 14; *Nevins* v. *City of Peoria,* 41 Ill. 502 (89 Am. Dec. 392). Under either rule no act should be done by the proprietor of land inconsistent with the due exercise of dominion over his own land: Cooley on Torts (2 ed.), p. 684.

11. In Smurr on Farm Drainage, Section 3, we find this language:

"Under the rule of the civil law, which has found favor in most of the common-law courts of England and of this country, where two fields adjoin and one is lower than the other, as between the owners of such adjacent lands, the owner of the lower ground has no right to erect embankments or to do anything that will stop the natural flow of water thereto from the upper land, nor anything that will cast it back upon the land above; such lower field being necessarily subject to all the natural flow of water from the upper field: That is, the owner of the higher tract of land has the right to have the surface water flowing or coming naturally upon his premises by rains or melting snows pass off the same through the natural channels upon or over the lower or servient estate, and the owner of the dominant heritage may make such drains and ditches for agricultural purposes on his own lands as may be required by good husbandry, although by so doing the flow of water may be increased in the natural channels which carry the water from the upper to the lower fields; and no one has the right to complain that the volume of water in its natural channels is increased by the artificial drainage of lands which naturally drain therein."

The reason, or the theory, of this rule is based upon nature itself, or, in other words, nature has ordained that surface waters should follow the natural slope or contour of the earth's surface, and the civil law has adopted that rule because it is the natural one: Smurr on Farm Drainage, §§ 4, 5; *Kauffman* v. *Griesemer,* 26 Pa. St. 407 (67 Am. Dec. 437, 440).

The law of this state favors the drainage of land. It provides:

"When any person, firm or corporation owning land which requires draining, or any incorporated town or city, in which there is any ditch, standing water or surplus water requiring draining, has no means of draining such ditch, standing water or surplus water, and objection is made by the owners of adjacent land to the construction thereon or thereover of necessary means of drainage, such person, firm, corporation or municipal corporation, may make application in writing to the county court in which such land, town or city is situated, for the right of way or privilege to cut or dig or construct sufficient means of drainage over said adjacent land; * * * " Section 9553, Or. L.

In the present case the owners of the company ditch were able to adjust the matter of right of way for their ditch by agreement without proceeding under the statute. No person is allowed to tap or bring water into a ditch without paying a reasonable compensation therefor: Section 9560, Or. L.

The interest of the people of this state demands that as far as possible all of the swamps, marshes, swales and wet land that can be successfully and conveniently drained and reclaimed should be permitted so to be treated, having due regard for the rights of owners of adjacent land. Water seeks its level. The rule that would best serve in this state, and tend to promote the interest of the people without causing undue hardship, would be to allow the owner of land to turn upon the land of an adjacent owner surface water in such quantities as would naturally drain in that direction by means of artificial drainage even though the flow of such water upon the lower tract is accelerated, due regard being observed for the interest of the adjacent owner so as to cause no unreason-

able inconvenience: *Whitney* v. *Willamette Bridge Ry. Co.,* 23 Or. 188, 192 (31 Pac. 472).

12. The charge to the jury in the present case fully and fairly submitted the questions in accordance with the law of this state. We approve the instructions.

13. According to the verdict, the City of Hillsboro connected its sewer with a private drain, overtaxing its capacity, and allowed material to accumulate and obstruct the flow of water causing it to flow back on private property of plaintiffs; and the city is liable for the damage: Joyce on Nuisances, §§ 300, 313; *Owens* v. *City of Lancaster,* 182 Pa. St. 257 (37 Atl. 858); *Blizzard* v. *Danville,* 175 Pa. St. 479 (34 Atl. 846). We do not deem it necessary to discuss the other assignments of error.

The judgment of the trial court is affirmed.

AFFIRMED.

BURNETT, C. J., and BROWN and McCOURT, JJ., concur.

---

Motion to dismiss appeal denied December 6, 1921, second motion allowed February 28, 1922.