[Civ. No. 3478.   Fourth Dist.   Jan. 12, 1948.]

L. M. TURNER et al., Respondents, v. GEORGE L. HOPPER et al., Appellants.

R. M. Crookshank for Appellants.

Head, Wellington & Jacobs for Respondents.

MARKS, J.—This is an appeal from a judgment which enjoined defendants from interfering with the free passage of rain and surface waters from plaintiffs' property flowing across defendants' property, and required defendants to remove a "fill-in and dam" located on their property.

The evidence in this case is not conflicting. The precise problem presented does not seem to have been decided in the exact form appearing here in any California decision to which our attention has been directed.

Plaintiffs are the owners of 8 acres of land lying east of Verano Road in Orange County, and defendants own 5 acres on the west side of that road. The north line of defendants' property is about 50 feet north of the southwest corner of plaintiffs' land. One Conkle owned the land immediately south of and adjoining plaintiffs' property.

The natural drainage of the land is slightly south of west so that the surface waters on plaintiffs' land originally would drain across part of defendants' property.

At least since a severe flood breaking out of the Santa Ana River in 1916, there has been a swale running across the southerly portion of plaintiffs' and the northerly portion of the Conkle property and extending westerly across defendants' land which drained the surface waters westerly so that they finally reached the Pacific Ocean. The drainage area is relatively small. Prior to the operations we will detail, the swale was described as about 250 feet wide and not over 4 feet in depth.

Verano Road extends north and south and separates the properties and some years ago was improved so that its grade was raised in crossing the swale. To permit the passage of surface waters from east to west two 12-inch pipes were placed under the road, presumably in or near the lowest portion of the swale as it then existed. The westerly fall of

the country is gentle so that during heavy rains the water formed a pond on plaintiffs' and Conkle's properties before it drained through the pipes and across defendants' land.

Early in 1943, plaintiffs leveled their land and filled the swale to the grade of the surrounding land, but leaving a ditch about 20 feet wide and about 4 feet deep adjoining and north of their south line. Conkle filled his property to his north line. Thus a ditch was left along what had formerly been the lowest part of the swale which was otherwise closed by the leveling operations. Defendants leveled their property completely filling the swale by raising the ground to the approximate level of the adjoining land. This cut off the natural drainage of surface waters from plaintiffs' property across defendants' land to the injury of plaintiffs by causing water to pond along and on their property.

The purpose of this action was to compel defendants to remove their obstruction to the natural drainage of surface waters westerly across their land as it had flowed prior to the time they made their fill. The plaintiffs had judgment and this appeal followed.

Plaintiffs rely on the well-established rules governing the natural drainage of surface waters in this state. Here we have involved no stream or flood waters so we need give no attention to them. The rules governing the flow and overflow of stream and flood waters and the drainage of surface waters are set forth in detail in many cases of which we need cite only *Heier* v. *Krull,* 160 Cal. 441 [117 P. 530] ; *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392 [188 P. 544, 9 A.L.R. 1200] ; *San Gabriel Valley Country Club* v. *City of Pasadena,* 184 Cal. 201 [193 P. 97] ; *LeBrun* v. *Richards,* 210 Cal. 308 [291 P. 825, 72 A.L.R. 336] ; *Mogle* v. *Moore,* 16 Cal.2d 1 [104 P.2d 785] ; *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1] ; *Coombs* v. *Reynolds,* 43 Cal.App. 656 [185 P. 877] ; and *Switzer* v. *Yunt,* 5 Cal.App. 2d 71 [41 P.2d 974].

The general rule applicable to the facts before us is clearly stated in *Heier* v. *Krull, supra,* as follows:

"Every landowner must bear the burden of receiving upon his land the surface water naturally falling upon land above it and naturally flowing to it therefrom, and he has the corresponding right to have the surface water naturally falling upon his land or naturally coming upon it, flow freely therefrom upon the lower land adjoining, as it would flow

under natural conditions. From these rights and burdens, the principle follows that he has a lawful right to complain of others, who, by interfering with natural conditions, cause such surface water to be discharged in greater quantity or in a different manner upon his land, than would occur under natural conditions.''

■ Defendants in effect argue that the narrowing of the swale from an extreme width of 250 feet and changing it to a ditch of the width of 20 feet was such a change in the natural conditions as to justify their complaint of the conduct of plaintiffs.

The evidence fails to support this contention. The bottom of the ditch is not below the bottom of the swale and is in the lowest part of the swale where surface waters flowed before, and the outlet is in a similar location. There is nothing to indicate that the ditch is not of ample size to accommodate the flow of all surface waters. There is undisputed evidence that the ditch does not increase the volume of water reaching defendants' land although it does increase the velocity of the flow across plaintiffs' property. As the volume of the surface waters reaching defendants' property is not increased by the ditch the burden placed upon them, as owners of the servient tenement, was not increased by the change made by plaintiffs in narrowing the swale to a ditch.

■ We must next consider the right of landowners to level their properties by filling in depressions on them. The only California case to which we have been cited bearing directly on that question is *Switzer* v. *Yunt, supra,* which is relied upon by both parties and which we believe must be held to be decisive of the issues here presented, although there are some factual differences in the two cases.

In *Switzer* v. *Yunt, supra,* it appears that Yunt owned 80 acres of land on the east side and Switzer owned 20 acres on the west side of a county road in Tulare County which had been raised in grading with a pipe extending across and under the road at the low point. The slope of the country was westerly so, as far as ordinary drainage was concerned, the Yunt property was the dominant tenement and the Switzer land the servient tenement. The land was originally ''hog wallow land'' which had to be leveled before it could be farmed successfully. There was a depression of about 1½ acres on the Yunt property which witnesses referred to as a ''duck pond.'' It held water during the rainy season. Yunt

leveled his property and raised the bed of the "duck pond" but did not otherwise change the general level of the land so that after grading the drainage was still westerly. He dug several ditches which caused water to flow towards the pipe under the road. Switzer built a dam on his property opposite the west end of this pipe. During a hard rain the dam broke and the water washed away top soil and fertilizer which had just been spread.

In his actions Switzer sought damages caused by the water erosion and an injunction prohibiting Yunt from permitting any water from his land to escape onto the Switzer property. The trial court gave Switzer damages in the sum of $200 and enjoined Yunt from causing *by artificial means* (the dug ditches) any water to flow from the Yunt property onto the Switzer land. It also enjoined Switzer from maintaining a dam or bank that would interfere with or prevent the natural flow of surface waters westerly and that would cause the water to back up on the Yunt property. This judgment was affirmed on appeal.

It was held that an owner could level his property to make it fit for cultivation but could not by artificial means (dug ditches there) increase the discharge of surface waters onto the land of a lower owner; that the lower owner could not, by means of an artificial dam, prevent the natural flow of surface water onto his property. Numerous cases are cited to support these conclusions which we think are controlling here.

It was held that owners had the right to level their properties and to fill in the low places to make their respective properties fit for cultivation just so long as the grading and filling operations did not increase the burden placed on the servient tenement to receive the natural flow of surface waters from the dominant tenement; that the owner of the servient tenement could not, by artificial means, prevent the natural flow of those surface waters onto his property. We can see no difference in principle between a dam several feet wide involved in the Switzer case and a fill several hundred feet wide involved here. Both were intended to check the natural flow of surface waters along the course provided by Nature.

Among other things, the judgment in the instant case provided that defendants "are, and each of them is, hereby ordered to forthwith remove the fill-in and dam located

on their real property situated in the County of Orange, State of California, described as follows.''

The foregoing portion of the judgment might well be construed as requiring defendants to remove all of the dirt placed in the fill so as to leave the swale in its original condition of about 250 feet wide. We do not believe that it is necessary to place any such burden upon them any more than it is necessary to require plaintiffs to remove all of the dirt they placed in the swale to level it. All that the law requires is that defendants receive the surface waters naturally flowing onto their property so that they will not back up onto plaintiffs' land. It is obvious that with the small drainage area involved and the relatively small ditch which plaintiffs find sufficient to care for the surface water, that a swale 250 feet wide across defendants' property is not necessary.

It is ordered that the quoted portion of the judgment be stricken therefrom and in lieu thereof the following be inserted: ''are, and each of them is hereby ordered to provide sufficient facilities to receive and transport the surface waters naturally and normally flowing from plaintiffs' property hereinbefore described, and such facilities to be of sufficient capacity to receive and transport such surface waters from plaintiffs' property that may flow through or over the county road at that place, so that such surface waters may flow onto and across defendants' property in the County of Orange, State of California, described as follows.''

As so modified the judgment is affirmed. Each of the parties will pay their own costs of appeal.

Barnard, P. J., and Griffin, J., concurred.