101 Cal.App.2d Supp. 918 (1950)
THE PEOPLE, Appellant,
v.
GEORGE PAPAYANIS, Respondent.
California Court of Appeals. 
Dec. 26, 1950.
 Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Philip E. Grey, Deputy City Attorney, for Appellant.
 Lillick, Geary & McHouse, and William H. Brainard for Respondent.
 BISHOP, J.
 The defendant, charged with having violated an ordinance of the city of Los Angeles, entered a plea of guilty and was sentenced to pay a fine of $500. Shortly thereafter [101 Cal.App.2d Supp. 920] he moved the trial court to set the judgment aside on the ground that the ordinance was in conflict with section 481 of the Fish and Game Code and with section 133 of the Harbors and Navigation Code. The trial court granted his motion and then dismissed the action, and in so doing erred, we have concluded, not because there is no conflict between the ordinance and the sections, but because in spite of such conflict the defendant was charged with a public offense, convicted by his plea, and the judgment of conviction was rightly imposed upon him.
 [1] There is, of course, no such procedure prescribed as that which was followed in this case, whereby a trial court passes upon its own judgment, after the same is entered upon a plea of guilty, not improperly induced, sets it aside and then dismisses the action. We stress the procedural aspect of the case no further than to express the obvious conclusion that no such action lies within the power of the trial court to correct any mere error committed by it, but, if it ever has the power to so dispose of a case, it must be because of some very fundamental lack of jurisdiction. No such lack appeared in this case, and the People quite properly appealed from the order.
 The complaint which initiated this case first of all alleged that "a misdemeanor, to-wit Violation of Rule 38, Section 12, of the General Rules and Regulations of the Board of Harbor Commissioners of the City of Los Angeles was committed by [the defendant]." It continued by charging, among other things, "that he caused and permitted to be pumped, discharged and deposited from the U.S. Navy Tanker 'Tamalpais' located at Berth 151, in and into the waters of the Los Angeles Harbor, the following substances: Black Oil." The accusatory provisions of the complaint concluded by stating, "All of which is contrary to the form of the Ordinances and Resolutions adopted and approved by the Municipal authorities of said City, in such cases made and provided, and against the peace and dignity of the People of the State of California."
 Although the complaint refers to "Rule 38, Section 12, of the General Rules and Regulations of the Board of Harbor Commissioners," we must deal with rule 38 in its true character, that is, as a provision of Ordinance No. 79895, adopted by the city council in June, 1938. The ordinance by its terms ratifies, confirms and approves the rules and regulations theretofore adopted by the Board of Harbor Commissioners, and declares that any person who violates any of the rules and regulations so adopted shall be deemed guilty of a misdemeanor, [101 Cal.App.2d Supp. 921] and subject to a $500 fine or six months' imprisonment, or both. Rule 38 provides: "It shall be unlawful for any person to pump, discharge or deposit, or to cause or permit to be pumped, discharged or deposited, or to pass or to allow to escape in or into the waters of Los Angeles Harbor any oil, spirits, or flammable liquid, or any coal tar, or refuse or residuary product of coal, or any petroleum, asphalt, bitumen, or other carbonaceous material or substance, or any product or compound thereof, or any bilge water containing any of said materials or substances."
 Unless it is "in conflict with general laws," this ordinance is obviously a proper exercise of the police power lodged in the city by section 11, article XI, state Constitution, which reads: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." Considering first the contention that there is a conflict between the ordinance and section 133 of the Harbors and Navigation Code, and that the conflict affects the present action, we find the provisions of that section to be: "Except in case of emergency imperiling life or property, or unavoidable accident, collision, or stranding, or as otherwise permitted by law, it is unlawful and constitutes a misdemeanor for any person to discharge, or suffer the discharge of oil by any methods, means, or manner, into or upon the navigable waters of the State from any vessel using oil as fuel for the generation of propulsion power, or any vessel carrying or having oil in excess of that necessary for its lubricating requirements, and such as may be required under the laws and prescribed rules and regulations of the United States and this State."
 "As used in this section, the term 'oil' means oil of any kind or in any form, including fuel oil, oil sludge, and oil refuse ..." The punishment fixed for a violation of this section, constituting, as it does, a misdemeanor, is made by section 19, Penal Code, the same as that prescribed by the city ordinance for a violation of its terms (that is, not to exceed six months' imprisonment, a fine of not over $500, or both).
 [2] As we noted in People v. Commons (1944), 64 Cal.App.2d Supp. 925, 929-930 [148 P.2d 724, 727- 728], there are several modes by which a local ordinance may be in conflict with general law. There is such a conflict if one prohibits what the other authorizes. Or the conflict may arise out of the fact that the general law purposely occupies the entire field, leaving no room for local regulation. A conflict is also [101 Cal.App.2d Supp. 922] held to exist when that which the city or county ordinance attempts to interdict is forbidden by some state law. The conflict last referred to exists, however, only to the extent that the same acts are made public offenses by the ordinance and the general law; the ordinance may validly contain further prohibitions not covered by the general law. (Natural Milk etc. Ass'n v. City etc. of San Francisco (1942), 20 Cal.2d 101, 109 [124 P.2d 25, 29-30]; Remmer v. Municipal Court (1949), 90 Cal.App.2d 854, 856-858 [204 P.2d 92, 94-96].)
 Examining rule 38 and section 133 in the light of these principles, we discover that they do conflict, in part. This is not because one prohibits that which the other authorizes, for neither authorizes anything. [3] Nor is there the slightest foundation for the contention that the state statute covers the entire field. It is, quite obviously, very restricted in its prohibitions. In the first place, it concerns itself with the discharge into navigable waters of oil only, and while it carefully enlarges the meaning of oil to include oil "of any kind or in any form," it is still "oil" and oil alone with which it is dealing. Secondly, it is not oil from every source that is the subject of the statute's concern, but only oil from a vessel using oil to make the vessel go, or carrying oil in excess of its lubricating requirements. The ordinance, on the other hand, prohibits the discharge not only of oil (generally) but of many other substances than oil and does not care where the oil or other substances come from, but only where they go. [4] As a result, however, both section 133 and rule 38 do make it a misdemeanor for a person to discharge oil into Los Angeles Harbor from a vessel using oil as fuel for the generation of propulsion power or having too much lubricating oil ("except in cases of emergency," etc.) and to this limited extent the two are in conflict.
 [5] "Black oil" is oil, moreover, and so the complaint in this case may come within the area of conflict. "May," we are forced to say, for there is nothing in the record so far to tell us whether or not the vessel from which the oil was discharged, the United States Navy Tanker Tamalpais, used oil to generate its own power or had an excess of lubricating oil. The natural supposition, however, is that it was a vessel coming within the terms of section 133, for we knew that there are almost no coal or corncob burning vessels on the coast, and so we take the position urged by the defendant, that is, that section 133 is supreme, and that rule 38 has no validity, in this case.
 [6] At this point we would emphasize that a criminal complaint [101 Cal.App.2d Supp. 923] is filed in a court having jurisdiction over ordinary misdemeanors, not with the purpose of obtaining a declaratory judgment concerning the identity of the law that the People contend has been violated, but with the purpose of prosecuting the violator. If, perchance, the act charged against the defendant is made a misdemeanor both by a state statute and a local ordinance, while this situation prevails the local ordinance has no validity, but the state statute has, and the act remains a public offense. A complaint which alleges that the defendant committed the act states a public offense, therefore, and it continues to be stated even though the complaint refers to the ordinance instead of the statute as the basis for the prosecution.
 The conclusion we have thus expressed is supported by authority. Ex parte Taylor (1890), 87 Cal. 91 [25 P. 258], involved the contention that an ordinance of the city of San Jose, which declares it to be unlawful to obstruct a street or sidewalk, was invalid because in conflict with the state statutes declaring such obstruction a nuisance and declaring one who maintains a nuisance guilty of a misdemeanor. Two conclusions were reached, the second one concurred in by all the justices: first, there was no conflict between the general law and the ordinance; second, if a conflict existed, even so, the petitioner, who had been convicted, was not entitled to his discharge, for "The complaint states facts which constitute a public offense under the statute, and alleges that they were done 'contrary to the form of the statute in such case made and provided.' ... Both the offense and the penalty was (sic) within the jurisdiction of the justice's court."
 The case just cited may be distinguished from ours in that in our complaint the contra formam statuti statement was "all of which is contrary to the form of the Ordinances and Resolutions adopted and approved by the Municipal authorities. ..." This distinction is an irrelevant one, however, as will appear from a consideration of Ex parte Mansfield (1895), 106 Cal. 400 [39 P. 775]. In that case, we find, a county ordinance made it a misdemeanor to carry on a business without a license, the very thing that section 435 of the Penal Code did. Two contentions were made: (1) that because of the conflict, the provision of the ordinance was void; (2) that the prosecution was under the ordinance because "the complaint on which he was tried referred only to the ordinance, and did not conclude with the declaration that his acts were contrary to the form, force, and effect of the statute." The [101 Cal.App.2d Supp. 924] Supreme Court agreed with the first contention; the provision of the ordinance was void. The petitioner was remanded, nevertheless, because section 1426, Penal Code, prescribing the contents of a complaint in a justice's court, did "not include a conclusion to the statute," as the common law had required. Section 1426, Penal Code, today prescribes the contents of a complaint in a municipal court, as well as in a justice's court, stating: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified." Neither in this sentence nor in any other sentence of the section is there any requirement of a reference to the statute or other legislative source of the offense charged.
 The problem was again presented in In re Murphy (1923), 190 Cal. 286 [212 P. 30]. This time an ordinance of the city and county of San Francisco was involved, one making it a misdemeanor to drive an automobile in other than a careful manner, with due regard to the safety of others. The petitioner had been sentenced to 50 days in jail upon his conviction under a complaint, which after alleging the careless driving, without regard to others, continued, "Thereby violating the provisions of sections 2 and 83 of Ordinance No. 1850 (New Series) of the Board of Supervisors of the City and County, contrary to the form, force and effect of the Statute [etc.]," and he wanted out, because he had been convicted under a void ordinance, the state law prohibiting the same acts as did the city ordinance. Our Supreme Court held the ordinance void, because of the conflict, but refused to release the petitioner, concluding that the complaint's reference to the ordinance was uncalled for and did not change the fact that an offense under the statute was stated, and that the petitioner had been properly convicted.
 The defendant was discharged in Ex parte Mingo (1923), 190 Cal. 769 [214 P. 850], but for the reason that the superior state law provided no imprisonment. In disposing of the point of interest to us, the Supreme Court stated (p. 771): "The mere fact that the complaint alleged a violation of the county ordinance instead of the state law would not render the judgment void in so far as the facts alleged and proved showed a violation of the state law. [Citing cases.]"
 We would not have dwelt on this point so lengthily but for two cases: In re Sic (1887), 73 Cal. 142 [14 P. 405], and In re Portnoy (1942), 21 Cal.2d 237 [131 P.2d 1]. It was held in each of these cases that a conflict existed between a local [101 Cal.App.2d Supp. 925] ordinance and a general law; that the local ordinance was void because of the conflict; and, as a result, a conviction purportedly based on the ordinance was insufficient excuse for petitioner's imprisonment. This was said of In re Sic in In re Taylor, supra, 87 Cal. 91, 95 [25 P. 258, 259]: "In Ex parte Sic, 73 Cal. 142 [14 P. 405], relied upon by the petitioner, the question whether the judgment was valid, notwithstanding the invalidity of the ordinance, was not raised or considered." The same comment can be made of In re Portnoy. None of the cases that we have relied upon was considered and either distinguished or overruled in the Portnoy case. There is nothing in the case, other than the result reached, that is inconsistent with the cases upon which we rely. We do not regard them as being overruled or superseded, just overlooked. We make bold, therefore, to continue to follow them.
 [7] We have been considering the complaint as though it stated a public offense created by section 133, Harbors and Navigation Code. But, as we noted earlier, it does not clearly do so, for nowhere is the character of the vessel alleged. We do not deem this important, however, because of the dilemma in which the defendant is placed. It does not matter, really, whether the vessel generates its power by oil or does not. True, in the one case he who discharges black oil violates section 133, but in the other case he violates the ordinance. The defendant argues that he was prejudiced by the prosecution under the ordinance because it cut off the defenses he would have had under the code section. Possibly they were eliminated by the stricter ordinance. We do not decide this question, for in this case the defendant essayed no defense (that he came within an exception to the statute); he pleaded guilty. If he was under any disadvantage by not knowing the character of the vessel he could have attacked the complaint for its uncertainty in that particular by a demurrer (Pen. Code, 1428.1). Having failed to demur, he waived the defect (section just cited). In any event, the uncertainty was not one going to the jurisdiction of the court. The complaint stated a public offense, either under the ordinance or the section, plainly sufficient to support the judgment that was entered (see In re Jingles (1946), 27 Cal.2d 496 [165 P.2d 12]).
 [8] We conclude, furthermore, that at some points the ordinance and section 481 of the Fish and Game Code touch the same subjects and are in conflict. That section reads: "It is unlawful to deposit in, permit to pass into, or place where [101 Cal.App.2d Supp. 926] it can pass into the waters of this State, any petroleum, acid, coal or oil tar, lamp black, aniline, asphalt, bitumen, or residuary product of petroleum, or carbonaceous material, or substance, or any refuse, liquid or solid, from any refinery, gas house, tannery, distillery, chemical works, mill or factory of any kind, or any sawdust, shavings, slabs, edgings, or any factory refuse, or any lime, any cocculus indicus, or any slag, or any substance or material deleterious to fish, plant life, or bird life." The punishment for a violation of this section is set by section 1410, Fish and Game Code, at a minimum fine of $100 or imprisonment for 25 days, with a maximum of $500 or six months, or both.
 [9] We are not bringing our judicial notice of the laws of chemistry into sufficiently sharp focus to enable us to determine whether or not "black oil," the subject of the complaint, which, being oil, is covered by the ordinance, is also one of the materials referred to in the section just quoted, because, by reason of the principles already discussed, there is no need to. The complaint charged that the defendant caused black oil to get into the waters of Los Angeles Harbor. If this act was covered by section 481, Fish and Game Code, the judgment of a $500 fine, entered upon defendant's plea of "guilty," was authorized by the combined provisions of sections 481 and 1410. If the act charged was not one of those covered by section 481, then (disregarding section 133 of the Harbors and Navigation Code), the city ordinance was violated, and the judgment was authorized.
 [10] We can understand that a defendant, who is called upon to plead to and to defend against a complaint making a charge which comes under one of three conflicting legislative acts, would like to know which one is controlling. There is no principle of procedure that requires the complaint, or the People, to advise him which law he has violated, and no principle of due process requires that he be so advised. It is enough that he be advised of the act which he is charged with having committed (together with the particulars required by section 1426, Penal Code). In this case before us such an act was plainly charged. The defendant confessed that he had committed it. The trial court should not have set the fully authorized judgment aside because of the contention that it was a state law and not the ordinance which the defendant had violated.
 The order appealed from is reversed.
 Shaw, P. J., and Stephens, J., concurred.