[Civ. No. 5230. Fourth Dist. Mar. 6, 1956.]

THE PEOPLE ex rel. Department of Public Works, Appellant, v. FORREST STOWELL et al., Respondents.

George C. Hadley, A. R. Early, Richard L. Franck and Joseph A. Montoya for Appellant.

Earl Redwine and Maurice C. Sherrill for Respondents.

GRIFFIN, J.—Plaintiff and appellant brought this action under section 725, subdivision (b), of the Streets and Highways Code, against defendants and respondents to restrain obstruction of a claimed natural water channel.

Defendants own three 40-acre sections of land near Mecca, on Highway 195, commonly known as Box Canyon Road, a secondary highway which crosses said property in an east-west direction. The slope of the land in this vicinity and the natural drainage is from the mountains to the north, in a general southerly direction toward the Salton Sea. This was formerly a county road taken over by the state, and from

the earliest days until about 1945, the entire road was constructed at grade. The terrain is of typical desert type and typical desert rainfall from infrequent storms is encountered in this area. The average rainfall is about 3 inches per year. It appears from the testimony that about the year 1945 there was flood damage to that entire area due to an excess of rain, and after the water crossed the highway at the point here involved a gulch about 10 feet deep resulted in the center of the road, running through the lower or southerly portion of defendants' land a short distance, and then spreading out into an alluvial fan toward the Salton Sea. It inundated the south half of the road to that depth. No such washing was indicated north of the highway. The greatest depth of any channel did not show a measurement of over 12 inches in that northern section. Thereafter plaintiff dug a dip in the road approximately 10 feet deep, 300 feet long, and about 22 to 24 feet wide, and then traffic passed through this dip.

In 1946, the Flood Control Works of the Coachella Valley Canal were completed. This construction was in progress in 1945, and its purpose was to protect not only the main (All American) Canal to the Coachella Valley but also the lands, utilities, railroads, and highways, and other properties below the canal from overflow damage from storm waters or surface waters. This project lies approximately 1½ miles north of Highway 195, from the point here involved and effectually disposes of both surface and flood waters from a range of rocky and barren mountains to the north. The only waters involved in this action are those originating south of the canal and north of and on Highway 195, and covering an area of approximately 325 acres. In July, 1953, defendants acquired their property. They were assessed $5.00 per acre per year for each acre available for irrigation purposes, whether the water was used or not. As soon as the water was made available defendants proceeded to level their land for agricultural purposes. There was no controversy until defendants, in preparing their land to the south for planting operations, and believing that all possible flow and drainage difficulties had been solved by the construction of the Flood Control Works, constructed a large bank of earth referred to as a dike, across the old channel or watercourse adjacent to the south side of the dip in the highway. It closed off the wash at that point. This resulted in a dip in the road with embankments on both sides of it of ap-

proximately the same height and on a level with the surrounding terrain.

There is a conflict of opinions as to whether surface waters which might accumulate in the area below the flood control canal will find their way through this particular course in the future. The bulk of the evidence is that there has not been sufficient rain in the area since 1945 to cause any runoff which would affect this old watercourse or drainage course to any extent. There is evidence that an irrigator leasing property to the north allowed irrigation water to escape and run into the dip one night; that 18 inches of water accumulated in the bottom of the dip; and that a traffic hazard resulted because there was no means for the water to escape on account of the construction of the embankment to the south on defendants' property.

Since the case was tried in the lower court plaintiff's counsel, on appeal, now contend they discovered that on February 3, 1955, a rainstorm occurred in that area and the road foreman observed water on the road in the bottom of the dip to a depth of about 6 inches in the center of the highway, and approximately 18 inches at the edge of the pavement. He offered a photograph so indicating. The request now is to produce this additional evidence in this court in determining the merits of this appeal. A motion for new trial was made March 11, 1955, and the only excuse for not offering this evidence at that time is that the foreman did not tell counsel of this fact until shortly before this appeal had been taken. The source of the water thus accumulated is not indicated, but from the photograph it might well appear that it was water that flowed upon and ran down the highway into the dip. This evidence, even if considered by this court, would not be conclusive of the question here presented. The application should therefore be denied.

The main argument presented by the pleadings and statements of counsel, as we see it, is who should bear the burden of paying the cost of filling the dip and bringing it to the grade level of the surrounding territory. Defendants in their answer allege that any apprehended injury or damage to the state highway would be removed by filling the dip to the grade of the adjacent level land; that defendant offered to cooperate with the state and pay an equitable cost of filling it, and again renewed that offer. In reply to the court's inquiry as to this offer plaintiff's counsel stated

that the state had considered this offer; that it was willing to pay 30 per cent of the cost, provided defendants built it according to plans and specifications provided by the state; that the state fixed a price which defendants claim was unjust, and the offer was not accepted at that amount. The judge refused to be an arbitrator as to this phase of the case and wrote a memorandum opinion which was incorporated as part of the findings. Therein he fully discussed the factual background and found that since the flood control work was completed it would take care of flood waters which would come across the dip except those waters which would naturally fall on the land north of and immediately adjacent to the dip; that no flood or surface waters have crossed or accumulated in the dip since the installation of the flood control project. It then found that the land north of the dip had been adequately protected by dikes, retention walls and banks of land, and found that the state, whose highways were also being protected by this flood control project, knew of it prior to the installation of the dip, and this fact could not have gone unnoticed by it or its Department of Highways; that despite these obvious facts it built a dip below the natural level and contour of the land on the north side; and knew that any water, on the surface of the highway near the dip, would flow into it from either end, and found that ''It is conceded by all parties to this action that if the dip were filled and the highway made to cross this fill, no danger would be present and everyone would be satisfied. Since this is true, it is clear that the dip is unnecessary under the present or anticipated conditions''; that ''It may be true that at one time there was a natural water course through this area. It is true that natural water courses may be present and have been present in other parts of the State but by reason of progress they have been changed or eliminated entirely. In the instant case the cause for a natural water course has eliminated the necessity for maintaining it. When the reason for the application of the rule of law no longer exists, then the law has nothing on which to operate. The court finds this to be true in the instant case. If this were not the law, the cities of San Francisco, Los Angeles and others would never have reached their present state of development because the people would have had to maintain natural water courses which no longer served any useful purpose.'' The court then found generally in favor of defendants and entered judgment accordingly.

It is plaintiff's claim that defendants have a duty to accept the drainage of the water across and from the highway and that this duty has been breached by the erection of the dike; that the judgment creates an impossible situation whereby plaintiff must accept onto its highway waters flowing from defendants' northerly property, but cannot discharge this water from the highway onto defendants' southerly property; and that thus impounded, this water creates a hazard to the traveling public; that it is plaintiff's duty to keep the state highway safe and in a usable condition under the mandate imposed upon it by sections 7, 91 and 92 of the Streets and Highways Code; and that the court failed to make a material finding that a watercourse existed south of the highway.

The court specifically found, upon conflicting evidence it is true, that a watercourse or natural channel did not exist north of the highway, and found, at least by inference, that since the construction of the flood control project, no water followed the former watercourse or natural drainage channel theretofore existing, either above or below the highway. Under this finding, which has evidentiary support, one cannot be enjoined from obstructing something that does not presently exist.

Plaintiff concedes in its brief that its concern is with those ''waters which, under conditions as they existed at the time of trial, would flow across its highway.''

Every landowner must bear the burden of receiving upon his land the surface water naturally falling upon land above it and naturally flowing to it therefrom, and he has the corresponding right to have the surface water naturally falling upon his land or naturally coming upon it, flow freely therefrom upon the lower land adjoining, as it would flow under natural conditions. (*Heier* v. *Krull,* 160 Cal. 441 [117 P. 530].)

No case or authority is cited which prevents a landowner from leveling his land in order that it may be devoted to agricultural projects so long as adequate provision is made for the natural flow of drainage water, if any. (*Turner* v. *Hopper,* 83 Cal.App.2d 215 [188 P.2d 257].)

It is true that water may flow into the dip from surface water falling on the highway leading into the dip and may cause some danger to the traveling public, but this portion of the highway could not be classified as a natural drainage or watercourse, particularly where the state created

the condition which permitted the water to flow into the dip through other means than its natural course. (*Robinson* v. *County of San Diego,* 115 Cal.App. 153 [300 P. 971].)

Application to take additional evidence denied. Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied March 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied May 2, 1956.