[Civ. No. 10452.    Third Dist.    Apr. 25, 1963.]

COUNTY OF COLUSA, Plaintiff and Respondent, v. FREDERICK J. STRAIN, Defendant and Appellant.

474

Manwell & Manwell, Daniel E. Weyand, Ray Manwell and E. I. Manwell for Defendant and Appellant.

Stanley Mosk, Attorney General, Raymond M. Momboisse and Edsel W. Haws, Deputy Attorneys General, for Plaintiff and Respondent.

FRIEDMAN, J.—Plaintiff County of Colusa and defendant Strain filed an "agreed case" under the provisions of section 1138, Code of Civil Procedure. According to the

agreed facts, the county has adopted Ordinance Number 265, requiring a permit for the leveling of land having an area greater than 5 acres. Defendant Strain was aware of the ordinance but refused to comply with it. In July 1959 he conducted a leveling operation without a permit on land having an area greater than 5 acres. A criminal complaint was filed and he was tried upon a charge of violating the ordinance, but the jury failed to agree. The statement also alleges that defendant Strain owns additional land in Colusa County for which he has developed a general plan for leveling and improving the drainage; that "he has threatened and does now threaten to continue" land leveling without a permit. The agreed statement also set forth that the defendant's land leveling operation improved the drainage on his own property but did not interfere with the natural drainage of contiguous properties owned by others.

The trial court entered a judgment declaring: (1) that the ordinance is constitutional; (2) that a county permit is required without regard to interferences with the drainage or rights of neighboring owners; and (3) that upon application, an injunction would issue to restrain defendant from land leveling without the required permit. From this judgment defendant appeals.

The ordinance in question was adopted in December 1958. Following a statement of purpose, the ordinance requires a permit from the county road commissioner as a prerequisite to land leveling operations upon any land area in one ownership totaling 5 or more acres; or for excavation, dredging or piling which changes the natural course of any channel or waterway. Application for a permit must be accompanied by plans or maps showing beginning and finished elevations, drainage and watercourses, adjacent roads, highways, bridges, culverts and such other data as the road commissioner may require. In the case of land leveling, the maps must depict contours at intervals of 1 foot. A filing fee is imposed. Maps and other drawings "shall be subject to approval by the road commissioner." The road commissioner shall within 30 days issue a permit, or a conditional permit, or shall deny the permit. The applicant may appeal to the board of supervisors for a review of the road commissioner's action. Violators are guilty of a misdemeanor, punishable by fine or jail imprisonment or both. The ordinance had additional provisions which will be mentioned at a later point in this opinion.

Code of Civil Procedure section 1138 permits parties

to a "question in difference" to submit an agreed case for judicial determination, provided that the controversy is real and one which might be the subject of a civil action between the parties. (*Collier* v. *Lindley*, 203 Cal. 641, 644-645 [266 P. 526]; *Matter of De Lucca*, 146 Cal. 110 [79 P. 853]; 3 Cal.Jur. 2d 3.) ■ The requirement of an actual case or controversy is identical to that prevailing when parties resort to the analogous declaratory judgment procedure. Availability of declaratory relief turns on existence of an actual case or controversy involving present rights or liabilities, not hypothetical or abstract disputes. (*Monahan* v. *Department of Water & Power*, 48 Cal.App.2d 746, 751 [120 P.2d 730]; see Note 41 Cal.L.Rev. 341, 344.)

■ Certainly the parties may not now seek a judicial declaration as to criminality of Mr. Strain's past conduct, which became the subject of an indecisive criminal trial. (Cf. *Orloff* v. *Metropolitan Trust Co.*, 17 Cal.2d 484, 489 [110 P.2d 396].) It does appear, however, that Strain has additional land which he desires to level. The parties to this action thus seek a judicial declaration which, in advance of actual conduct, will determine whether or not that conduct will render a citizen amenable to criminal punishment under a county ordinance which he asserts to be unconstitutional.

Several California decisions evince a somewhat unreceptive attitude to this type of proceeding. (*Brown* v. *Board of Police Comrs.*, 58 Cal.App.2d 473, 479 [136 P.2d 617]; *Hayden Plan* v. *Friedlander*, 97 Cal.App. 12, 14 [275 P. 253]; see also *Adler* v. *City Council*, 184 Cal.App.2d 763, 775 [7 Cal.Rptr. 805].) ■ There is substantial justification for declaratory proceedings to test constitutionality of police power regulations which threaten otherwise legitimate economic activity with the obloquy of criminal prosecution. (Borchard, Declaratory Judgments (2d ed.) pp. 1020-1026; Anderson, Declaratory Judgments (2d ed) pp. 1436-1437, 1471-1476; see Note 12 So.Cal.L.Rev. 319.) Several California decisions have sustained declaratory actions where a going business enterprise is faced with sanctions under a claimed violation of statute or ordinance. (*LaFranchi* v. *City of Santa Rosa*, 8 Cal.2d 331 [65 P.2d 1301, 110 A.L.R. 639]; *Sandelin* v. *Collins*, 1 Cal.2d 147 [33 P.2d 1009, 93 A.L.R. 956]; *Blatz Brewing Co.* v. *Collins*, 69 Cal.App.2d 639 [160 P.2d 37].) ■ It must be clear that the citizen intends to perform the disputed act. (*Chas. L. Harney, Inc.* v. *Contractors' State License Board*, 39 Cal.2d 561, 564 [247 P.2d 913].) ■ Alternatively,

the matter should be one which merits settlement in the public interest.  (*Collier* v. *Lindley, supra,* 203 Cal. at p. 645.)

██  Because of the interest which Mr. Strain alleges in future leveling of his property and because the ordinance affects a substantial segment of the economy in Colusa County (which is predominantly agricultural), it is entirely appropriate that we pass upon the ordinance.

██  The primary contention on appeal is that the ordinance invades a field preempted by state law.  Cited as evidences of legislative intent to exclude local regulations such as the present ordinance are Streets and Highways Code sections 720 to 730 and section 1487.  The former sections prohibit various encroachments and impairments of state highways, provide for their abatement, and impose criminal penalties on violators. Section 725 in particular prohibits drainage of water from private lands onto state highways resulting in damage to the latter.  Section 1487 is a parallel provision protecting county highways against drainage.

██  "In determining whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the 'whole purpose and scope of the legislative scheme'. . . ."  (*In re Lane,* 58 Cal.2d 99, 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].)  ██  The Colusa County ordinance requires a permit for (1) land leveling on 5 acres or more, (2) changing the natural course of any channel or waterway. It applies to the leveling of land which does not border public roads as well as land leveling which creates no exterior changes in drainage.  Either because of lack of proximity or because of lack of drainage involvement, a vast amount of land leveling is possible without the slightest danger of increasing the moisture content of public highways. The purpose of the ordinance, then, is much broader than the Streets and Highways Code provisions.  ██  The possibility that the ordinance may, on occasion, prevent what the state law prohibits, would result in invalidity only to the limited extent of the duplication. (*Markus* v. *Justice's Court,* 117 Cal. App.2d 391, 396 [255 P.2d 883]; *People* v. *Papayanis,* 101 Cal.App.2d Supp. 918, 922 [226 P.2d 91].)  If flooding does occur, the holder of a county permit cannot regard it as a license to violate state law.  ██  In short, the statutes cited by defendant are of considerably narrower purpose and limited scope.  They do not disclose nor do they justify an inference of legislative intent to exclude local regulation of land leveling.

Not cited by defendant are various provisions of the Water Code by which the state has asserted control over water resources, the appropriation and to some extent the diversion of the water. In the absence of discussion by counsel, we are not disposed to explore this phase of the matter in any detail. ▮ Suffice it to refer to *In re Maas,* 219 Cal. 422 [27 P.2d 373], holding that the general police powers of counties permit them to adopt ordinances for the conservation of water when such ordinances do not conflict with any general law of the state.

Next, without citation of authority or discussion of principle, counsel for defendant argue that the ordinance unreasonably delegates to the county road commissioner arbitrary authority to grant or deny permits. ▮ It is elementary, of course, that a legislative body may delegate to an administrative officer discretion to carry out a declared policy according to a prescribed test or standard. (*Franchise Tax Board* v. *Superior Court,* 36 Cal.2d 538, 548 [225 P.2d 905].) ▮ The ordinance does not repose unlimited or arbitrary powers in the county road commissioner. Section V requires that the application and plans be reviewed "to insure that the proposed work will not result in violating existing laws, will not jeopardize public or private property or improvements and will not endanger the public health, safety, convenience and general welfare." Under section VI, an application contemplating changes in natural watercourses must provide for the maintenance of natural runoff to neighboring properties.

The standards guiding the road commissioner are sufficiently definite. He does not possess uncontrolled discretion. The ordinance does not violate constitutional inhibitions against unlimited delegations of authority. (*In re Petersen,* 51 Cal.2d 177, 184-186 [331 P.2d 24]; *Butterworth* v. *Boyd,* 12 Cal.2d 140, 148-149 [82 P.2d 434, 126 A.L.R. 838].)

Section IV of the ordinance provides that maps and drawings submitted by the applicant "shall be subject to approval by the Road Commissioner." Construed in relation to the entire enactment, this clause simply requires that maps and drawings shall adequately furnish the information specified by the ordinance. It does not permit arbitrary rejection.

It is urged that the ordinance unconstitutionally discriminates against owners of parcels of 5 acres or more, that owners of small parcels may also create damage by earth moving. ▮ Legislative classification is, of course, quite permissible

when based upon some distinction reasonably justifying differentiation in treatment. (*City of Walnut Creek v. Silveira,* 47 Cal.2d 804, 809 [306 P.2d 453].) ▮ Every intendment is in favor of the legislative classification and it will not be overthrown unless palpably arbitrary. (*State of California v. Industrial Acc. Com.,* 48 Cal.2d 365, 371 [310 P.2d 7]; *Martin v. Superior Court,* 194 Cal. 93, 101 [227 P. 762].) ▮ Here the board of supervisors concluded that land leveling of parcels under 5 acres did not create the risks or present the problems involved on larger scale operations. The board was free to recognize degrees of harm and to restrict its enactment to situations where it considered the evils to be the greatest. (*Allied Properties, Inc. v. Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 148-149 [346 P.2d 737].) We ourselves possess no knowledge which might justify the conclusion that exemption of small parcels was "palpably arbitrary." If such knowledge is available, the record does not reveal it. In view of the intendments in favor of constitutionality, we see no reason to regard the ordinance as discriminatory.

Finally, counsel for defendant contend that the ordinance is "unduly oppressive" and refer to "strangling invasions of the rights and liberties of the individual in this nation by all levels of government." Epithets are no substitute for intelligent argument fortified by precedent. Apparently counsel are attempting to urge the notion that the objective of the ordinance is not one which may legitimately be sought under the county's police power; or, in the alternative, that its regulatory provisions bear no reasonable relation to its objective. (See *Allied Properties, Inc. v. Department of Alcoholic Beverage Control, supra,* 53 Cal.2d at p. 146.)

Section I of the ordinance sets out the following declaration: "The Board of Supervisors does hereby find that certain regulations governing the levelling of land, the obstruction of natural drainage; and the control of irrigation and drainage water resulting therefrom are necessary for the protection of roads, highways, and other public properties and improvements pertaining to public health, safety, convenience and general welfare."

The quoted provision is hardly a model of clarity. Expressing an initial purpose to protect public roads and public works, its language then expands to embrace sweeping notions of health, safety, convenience and general welfare; without, however, indicating whether these latter terms are limited to

public roads and public works, or whether they constitute a vastly enlarged and independent set of objectives. ▮ Although vague, section I of the ordinance has no independent operative effect. Being only a preamble, it does not enlarge the scope of the operative sections. (See Crawford, Statutory Construction, § 205, p. 356.) The basic operative provision is section II, which prohibits two kinds of activity without a permit: (1) leveling of 5 acres or more in one ownership, and (2) excavation or similar operations which change the natural course of any channel or waterway. In this basic operative provision, rather than the ambiguous declaration, we look for permissible objectives of public policy which justify the restriction of private activity. ▮ It is elementary, of course, that we have nothing to do with the wisdom or desirability of the regulation. (*Allied Properties, Inc.* v. *Department of Alcoholic Beverage Control, supra,* 53 Cal.2d at p. 146.) ▮ If there is any reasonable basis in fact to support the legislative body's determination of wisdom and necessity, the courts cannot interfere. (*Consolidated Rock Products Co.* v. *City of Los Angeles,* 57 Cal.2d 515, 522-523 [20 Cal.Rptr. 638, 370 P.2d 342].)

▮ Certainly the county may act to prevent shifting of soil or changes in drainage which encroach upon or adversely affect public improvements and utility lines. As we have noted, the ordinance may in some instances constitute an attempt to superimpose itself upon state laws protecting public highways; nevertheless, its possible invalidity in those situations does not result in invalidity in other situations. The permit requirement is much wider in scope, extending to leveling and earthmoving operations which do not affect public improvements. Aside from protection of public works, the ordinance has the apparent objective of guarding neighboring landowners against harmful effects of drainage changes.

▮ Counties and cities have power to adopt police regulations to prevent nuisances, not only those which have been declared such but also those which may be anticipated. (*In re Mathews,* 191 Cal. 35, 38-39 [214 P. 981] ; *Odd Fellows' Cemetery Assn.* v. *City & County of San Francisco,* 140 Cal. 226, 232 [73 P. 987] ; *In re Jones,* 56 Cal.App.2d 658, 663 [133 P.2d 418].) In several cases it has been said that a landowner may level his land for agricultural purposes, but he has the duty to make adequate provision for the natural flow of drainage waters, if any. (*People* v. *Stowell,* 139 Cal.App.2d 728, 733 [294 P.2d 474] ; *Turner* v. *Hopper,* 83 Cal.App.2d 215

[188 P.2d 257].) ■■■ Movement of soil, filling of swales and changes of grade will frequently increase or reduce the runoff of surface water to neighboring lands. Owners of the latter have a right to protection against changes in surface water drainage caused by interference with natural conditions. (*LeBrun* v. *Richards,* 210 Cal. 308, 315-316 [291 P. 825, 72 A.L.R. 336] ; *San Gabriel Valley Country Club* v. *County of Los Angeles,* 182 Cal. 392, 298 [188 P. 554, 9 A.L.R. 1200] ; *Wood* v. *Moulton,* 146 Cal. 317, 319 [80 P. 92] ; *Turner* v. *Hopper, supra,* 83 Cal.App.2d at pp. 217-218.) These protective rules have been evolved in suits by one property owner against another. ■■■ Nevertheless, if a county board of supervisors desires to provide property owners with advance protection against such harms, the courts cannot say that its action is outside the broad police powers reposed in the county by article XI, section 11 of the state Constitution.

■■■ The objectives being proper, we see no invalidity in the means by which the ordinance seeks to accomplish it. Defendant Strain seems troubled by the rather elaborate and perhaps expensive collection of data demanded upon application for a permit. Oppressive and confiscatory demands would be of interest. To say that the board of supervisors might have imposed less burdensome demands is to review the wisdom of the ordinance, a matter outside judicial scope.

■■■ The ordinance being valid, the land leveler is not privileged to make his own prediction as to the likelihood of harmful exterior effects. A permit is required without regard to anticipated drainage or harmful effects upon neighboring property.

We concur in all respects with the declarations of the judgment entered by the trial court, which is affirmed.

Pierce, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied May 21, 1963, and appellant's petition for a hearing by the Supreme Court was denied June 19, 1963.