266 Cal.App.2d 507 (1968)
THE PEOPLE, Plaintiff and Respondent,
v.
ALFRED OROZCO et al., Defendants and Appellants.
Crim. No. 15116. 
California Court of Appeals. Second Dist., Div. Three 
Oct. 14, 1968.
 Richard S. Buckley, Public Defender, Mark E. Overland, Floyd W. Davis and James L. McCormick, Deputy Public Defenders, for Defendants and Appellants.
 Charles E. Martin, City Attorney, Martin & Flandrick, Robert A. Neher, and William J. Zeutzius for Plaintiff and Respondent.
 MOSS, J.
 Defendants were convicted of inhaling glue with the intent of becoming intoxicated in violation of section 4207.1 of the Monterey Park Municipal Code. Orozco was arrested while driving a car in an erratic manner on a public street in the City of Monterey Park. He was found slumped in *510 the driver's seat while a strong odor of glue emanated from a crumped cloth in his lap; he appeared to be intoxicated. A tube of model cement was found on the front seat. Valdez, a passenger in the car, was found unconscious on the front seat, his face on a diaper which was saturated with glue. The arrest took place on February 12, 1967.
 The principal question on this appeal is whether section 4207.1 invades a field that is preempted by state law. We accepted certification from the appellate department of the superior court pursuant to rule 63 of California Rules of Court to settle that question.
 At the time of the arrest section 4207.1 of the Monterey Park Municipal Code provided: "No person shall inhale, breathe or drink any compound, liquid, chemical or any substance known as glue, adhesive, cement, mucilage, dope or any material or substance, or combination thereof with the intent of becoming intoxicated, elated, dazed, paralyzed, irrational or in any manner changing, distorting or disturbing the eyesight, thinking process, balance or coordination of such person. For the purpose of this part, any such condition so induced is deemed to be an intoxicated condition. The provisions of this section shall not pertain to any person who inhales, breathes or drinks such material or substance pursuant to the direction or discretion of any doctor, physician, surgeon, dentist or pediatrist authorized to so direct or prescribe."
 [1] Section 4207.1 is susceptible of the interpretation that it applies to the inhalation of "any compound, liquid, chemical ... or any material or substance"; nevertheless, guided by the rule of construction that particular expressions in a statute qualify those which are general (Civ. Code, 3534), we read section 4207.1 as if its language included the words inserted in brackets as follows: "... any compound, liquid, chemical or any [other] substance known as glue, adhesive, cement, mucilage, dope or any [similar] material or substance, or combination thereof. ..." As so read, this section is "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties" (Connally v. General Constr. Co., 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126, 127]), and, therefore, meets the constitutional requirement of certainty.
 Section 11 of article XI of the California Constitution provides, "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and *511 other regulations as are not in conflict with general laws."
 [2] A local ordinance may be in conflict with general laws in several ways. A conflict may exist between general law and ordinance if the ordinance prohibits conduct that is expressly authorized by state law. (Ex parte Daniels, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172]; In re Martin, 221 Cal.App.2d 14 [34 Cal.Rptr. 299]; see Bragg v. City of Auburn, 253 Cal.App.2d 50 [61 Cal.Rptr. 284].) A conflict may also exist if an ordinance prohibits the same acts which are forbidden by state law. (In re Portnoy, 21 Cal.2d 237, 240 [131 P.2d 1]; Pipoly v. Benson, 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]; In re Iverson, 199 Cal. 582 [250 P. 681]; In re Sic, 73 Cal. 142, 148 [14 P. 405]; People v. Evans, 249 Cal.App.2d 254, 260-261 [57 Cal.Rptr. 276]; People v. Papayanis, 101 Cal.App.2d Supp. 918, 921-922 [226 P.2d 91]; see People v. Commons, 64 Cal.App.2d Supp. 925, 929 [148 P.2d 724].) [3] No such conflicts exist in this case because the general law does not expressly authorize or prohibit the ingestion of glue or similar substances. [fn. 1]
 [4] An ordinance may also be in conflict with general law if it enters a field fully occupied by state law, either expressly (People v. Moore, 229 Cal.App.2d 221, 226-227 [40 Cal.Rptr. 121]) or by implication (see, e.g., In re Lane, 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897]; In re Koehne, 59 Cal.2d 646 [30 Cal.Rptr. 809, 381 P.2d 633]; In re Moss, 58 Cal.2d 117 [23 Cal.Rptr. 361, 373 P.2d 425]; Abbott v. City of Los Angeles, 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974]; People v. De Young, 228 Cal.App.2d 331 [39 Cal.Rptr. 487]). "Whether a particular statute or group of statutes is sufficiently comprehensive to show an intent to occupy the entire field is a matter *512 which cannot properly be decided upon the basis of any single, precise test. Rather, the courts must rely upon broad general principles which are flexible enough to embrace our varied and rapidly expanding body of legislation. Determination of the question depends primarily upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate, and the intent of the Legislature is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme." (In re Lane, supra, 58 Cal.2d 99, 110 [concurring opinion]; Tolman v. Underhill, 39 Cal.2d 708, 712 [249 P.2d 280].)
 [5] The court's characterization of the "field" occupied by state legislation is a principal factor in the determination of the scope of the legislative scheme. For example, the Supreme Court defined the field of state legislation considered in In re Hubbard, 62 Cal.2d 119, 123-127 [41 Cal.Rptr. 393, 396 P.2d 809], not as "all gambling," but only those games prohibited by Penal Code section 330, thus permitting local supplementary regulation with respect to other forms of gaming. (See People v. McGennis, 244 Cal.App.2d 527 [53 Cal.Rptr. 215] [upholding "visiting ordinance"].) Since Hubbard, an ordinance regulating pinball machines was upheld because the state had not preempted "the field of pinball regulation." (People v. Mason, 261 Cal.App.2d 348 [68 Cal.Rptr. 17].) In contrast, the state was held to have adopted a general scheme for the regulation of the criminal aspects of being intoxicated in a public place so as to render invalid local regulation of public drunkenness. (In re Koehne, supra, 59 Cal.2d 646; In re Zorn, 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635]; People v. Lopez, 59 Cal.2d 653 [30 Cal.Rptr. 813, 381 P.2d 637].) A review of state laws dealing with intoxication on private as well as public premises led the court in People v. De Young, supra, 228 Cal.App.2d 331, 333, to characterize the field preempted more broadly as "the regulation of the criminal aspects of being intoxicated" and thus to void an ordinance which forbade any person to be in a state of intoxication on private premises. On the other hand, where the field was characterized as regulation of the consumption of alcoholic beverages state law concerning consumption of liquor was held to be sufficiently selective to permit local regulation in that field. (People v. Butler, 252 Cal.App.2d Supp. 1053 [59 Cal.Rptr. 924].)
 Defendants contend that the purpose of section 4207.1 of *513 the Monterey Park Municipal Code is to curb or prevent intoxication and, therefore, that the section operates as a regulation of the criminal aspects of intoxication, a field of regulation which has been preempted by state law. (People v. De Young, supra, 228 Cal.App.2d 331.) The first sentence of the ordinance, according to defendants, merely describes the physical and mental conditions which the city council was trying to prevent, and the purpose of the ordinance is expressed in the second sentence, which says, "For the purpose of this part, any such condition so induced is deemed to be an intoxicated condition."
 [6] The major consideration in interpreting a criminal statute is the legislative purpose. (Witkin, Cal. Crimes (1963 ed.) Introduction, 11, page 13.) The danger of volatile intoxicant sniffing, particular to minors, has been receiving increasing attention in recent years. (See Task Force Report: Narcotics and Drug Abuse, published by the President's Commission on Law Enforcement and Administration of Justice, 1967, pp. 36-37, 133-134; Ackerly, W. C., and Gibson, G., Lighter Fluid Sniffing, Am.J. Psychiat. (1964) 120, 1056-1061; Krug, D. C., Sokol, J., and Nylander, I., Inhalation of Commercial Solvents, A Form of Deviance Among Adolescents, in Drug Addiction in Youth, ed. Ernest Harms (1965) New York:pergamon Press; Sterling, J. W., A Comparative Examination of Two Modes of Intoxication--An Exploratory Study of Glue Sniffing (1964) J. Crim. L., C. & P. S. 55, 94-99.) The activity against which section 4207.1 is directed is the inhalation of glue and similar substances. Since it is possible to inhale intoxicants under innocent circumstances, inhalation is made an offense only when done with the specific intent of becoming intoxicated. The prohibited act is complete whether or not the person achieves an intoxicated condition. [7] When considered in the light of the evil which prompted the enactment of the ordinance and the method of control which the city council chose, it is apparent that the legislative purpose was the control of inhalation of glue, not of intoxication in general. The purpose of the second sentence of section 4207.1 is not clear to us, but its insertion cannot support defendants' contention that the section is aimed at intoxication rather than inhalation of certain intoxicants.
 At the time defendants were convicted in May 1967, the use of glue and similar substances as intoxicants was not recognized in the general law. Toluene, the toxic element in the *514 glue inhaled by defendants, is not a drug (Health & Saf. Code, 26200) [fn. 2] and, therefore, its use and possession were not then and are not now regulated by the general law as an illegal narcotic or dangerous drug. The code sections prohibiting public drunkenness (Pen. Code, 647, subd. (f)) and drunk driving (Veh. Code, 23101 and 23102) included only persons "under the influence of intoxicating liquor or any drug." While the list of substances regulated as poisons was expanded in 1965 to include toluene and several other substances (Bus. & Prof. Code, 4160, sched. D), no attempt to regulate its use was made at that time. A few code provisions penalize intoxication without reference to the substance used to become intoxicated. (Pen. Code, 367d, 367e; Veh. Code, 21958; Fish & G. Code, 3001; Gov. Code, 3001, 19572, subds. (h) and (i)).
 Awareness of the social problem presented by the inhalation of volatile intoxicants is of recent origin. (See Task Force Report, supra, pp. 36, 133.) The absence of state legislation in this field at the time defendants were arrested and tried can be more reasonably attributed to a lack of awareness by the Legislature that the problem was one of state-wide concern than to an intention to preclude local legislation in the field. A legislative intent to preempt can be more readily found where the activity concerned is more widespread and the social values involved in its regulation are more generally known than they are in this case. (See, for example, In re Lane, supra, 58 Cal.2d 99 [sexual intercourse]; In re Moss, supra, 58 Cal.2d 117 [nudity]; Abbott v. City of Los Angeles, supra, 53 Cal.2d 674 [registration of criminals]; Tolman v. Underhill, supra, 39 Cal.2d 708 [loyalty oaths].)
 Effective November 8, 1967, the public drunkenness and drunk driving sections of the law were amended to include within their prohibitions persons "under the influence of toluene or any other substance defined as a poison in Schedule D of Section 4160 of the Business and Professions Code." (Pen. Code, 647, subd. (f); Veh. Code, 23101.5 and 23102.5.) These amendments appear to be a first attempt by the Legislature to regulate the effects of glue sniffing and do not, as urged by defendants, confirm a prior intention to preclude local regulation of that activity.
 For the reasons stated above the ordinance under which *515 defendants were convicted was valid at the time they were arrested and convicted. Thereafter, as we have noted, effective November 8, 1967, the Legislature amended the law to include persons under the influence of toluene, the intoxicant contained in glue, within the prohibitions against public drunkenness and drunk driving. It might be argued that this step into the field of regulation of the effects of glue sniffing operated as an expression of legislative intent to foreclose local legislation in the same field. [8] A court will ordinarily inquire into the constitutionality of a statute only to the extent required to decide the case before it. (See 16 C.J.S. Constitutional Law, 94, notes 64 and 65.) Guided by this principle we do not consider the preemptive effect of the 1967 amendments because even if we were to decide that they did have the effect of repealing section 4207.1 of the Monterey Park Municipal Code, under the general saving clause embodied in section 9608 of the Government Code we would have to affirm the convictions of defendants.
 [9a] Section 9608 of the Government Code provides, "The terminaton or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the ... punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such ... punishment is expressly declared by an applicable provision of law." This section expresses a legislative intent that an offender of a law that has been repealed or amended should be punished. (In re Estrada, 63 Cal.2d 740, 747-748 [48 Cal.Rptr. 172, 408 P.2d 948].) By the amendment to section 647, subdivision (f) of the Penal Code and the enactment of sections 23101.5 and 23102.5 of the Vehicle Code in 1967 the Legislature expressly demonstrated an intent to punish the conduct for which defendants stand convicted.
 [10] The common law rule that repeal of a penal statute bars all prosecutions not reduced to final judgment (Spears v. County of Modoc, 101 Cal. 303 [35 P. 869]) is premised upon the presumed intention of the Legislature to grant a legislative pardon. (In re Estrada, supra, 63 Cal.2d at p. 747.) The reason for the common law rule disappears when the repeal is accomplished by enactment of another penal statute carrying the same or greater punishment. [fn. 3] Therefore, even without the *516 general saving clause embodied in section 9608 of the Government Code, the intent of the Legislature is in harmony with the determination that the defendants were validly convicted.
 [9b] There is authority to the contrary. Under facts similar to those here it was held in People v. De Ferrari, 63 Cal.App. 671 [219 P. 1048], that the phrase "any law creating a criminal offense" contained in the general saving clause does not extend to the repeal of a municipal ordinance by a state statute and, therefore, that under the common law rule no prosecution under the repealed ordinance could be had. The court relied on a one-line statement in Spears v. County of Modoc, supra, 101 Cal. 303, 307, that the general saving clause does not extend to the repeal of a municipal ordinance. In Spears, the municipality repealed its own ordinance. Spears holds that the legislative intent expressed in the general saving clause then in effect ( 329 of the Pol. Code) should not be attributed to municipal legislatures when they repeal their own laws. Spears is therefore not authority for the proposition for which it was cited in De Ferrari. Municipal ordinances are treated as "laws" throughout our codes (as for example in Gov. Code, 36900) and, therefore, we see no logical basis to follow De Ferrari on this point.
 The judgments are affirmed.
 Ford, P. J., and Cobey, J., concurred.
NOTES
[fn. 1] 1. The reason that a conflict is said to exist where an ordinance duplicates state law is that a conviction under the ordinance will operate to bar prosecution under state law for the same offense. (In re Sic, supra, 73 Cal. 142, 148.) Where "the prosecution is or should be aware of more than one offense in which the same act or course of conduct plays a significant part, all such offenses must be prosecuted in a single proceeding unless joinder is prohibited or severance permitted for good cause." (Kellett v. Superior Court, 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206].) Defendant Orozco may also have been guilty of driving while intoxicated in violation of section 367d of the Penal Code. (See People v. Fair, 254 Cal.App.2d 890 [62 Cal.Rptr. 632]; cf. People v. Lewis, 4 Cal.App.2d Supp. 775 [37 P.2d 752]; People v. Gossman, 95 Cal.App.2d 293, 295 [212 P.2d 585].) We need not explore the effect of this possibility on the preemption issue presented by this case because the facts concerning the degree of Orozco's intoxication were not developed at the trial and no question of his potential liability for driving while intoxicated was briefed or argued on appeal.
[fn. 2] 2. Toluene is not listed as a drug in the authorities referred to in section 26200.
[fn. 3] 3. The violation of a city ordinance is a misdemeanor (Gov. Code, 36900); so is the violation of Penal Code, section 647, subdivision (f) and Vehicle Code, section 23102.5. The violation of Vehicle Code, section 23101.5 is a felony--misdemeanor.