[No. A051318. First Dist., Div. Four. Oct. 30, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
GEORGE BREWER, Defendant and Respondent.

## Counsel

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Catherine A. Rivlin and David H. Rose, Deputy Attorneys General, for Plaintiff and Appellant.

Jay B. Gaskill, Public Defender, Charles M. Denton and Scott Spear, Assistant Public Defenders, for Defendant and Respondent.

## Opinion

POCHÉ, Acting P. J.—As originally enacted, Oakland Municipal Ordinance section 3-4.21 (hereafter the Ordinance) provided in pertinent part: "No person shall drink or have in his possession an open container of any alcoholic beverage: (1) On any public street, sidewalk, or other public way; (2) within 50 feet of any public way while on private property open to public view without the express permission of the owner, his agent, or the person in lawful possession thereof."

On the evening of April 17, 1988, Oakland Police Officer Timothy Sanchez observed defendant George Brewer standing in front of a liquor store and apparently drinking from a container enveloped in a brown paper bag. Seeing Sanchez, defendant set down the bag and began walking away.

Sanchez checked the bag and found it contained a partially consumed can of beer. Believing that he had observed a violation of the Ordinance, Officer Sanchez initiated a detention that led to his discovery of cocaine on defendant's person.

Based upon this incident, defendant was charged with possessing cocaine base in violation of Health and Safety Code section 11350. The magistrate who conducted the preliminary examination denied defendant's motion to suppress evidence generated by the search. After the information against him had been filed, defendant moved pursuant to Penal Code section 1538.5, subdivision (i), for a special hearing to determine whether the evidence should be suppressed. The trial court conducted two hearings on the motion. At the first hearing the court raised the matter of preemption on its own initiative and directed supplemental briefing on that issue.[1] At the second hearing the court granted the motion, and then dismissed the action pursuant to Penal Code section 1385, following which the People commenced this authorized appeal (Pen. Code, § 1238, subd. (a)(7)).

The trial court's decision was based in part on the view, endorsed by the parties, that the Ordinance has a dual emphasis on (1) the possession of alcohol, and (2) the consumption of alcohol. Accepting the lead of *People* v. *Butler* (1967) 252 Cal.App.2d Supp. 1053 [59 Cal.Rptr. 924], the trial court held that the Ordinance's attempted regulation of possession was preempted by the exclusive power of the state (see Cal. Const., art. XX, § 22),[2] but that Oakland did have the power to prohibit consumption. The first of the ensuing difficulties is that the court further held that the pre-empted portion of the Ordinance was not severable from the legitimate portion. Secondly, those portions of the Ordinance that were linked to its "public way" language had been found unconstitutionally vague by a municipal court in 1981, which thus precluded its use by Sanchez in detaining defendant.

Despite desultory opposition by defendant, we discern no basis for not agreeing with the first two of the three conclusions respecting the Ordinance made by the trial court. Its decision to concur with the *Butler* result was correct because the underlying reasoning was sound. We are of the same opinion, and therefore adopt *Butler*'s reasoning as our own:

    ■ " 'Analysis of the many prior decisions on this subject indicates that although the language differs from case to case, the rationale of all have one

---

[1]The city attorney of Oakland submitted a memorandum of points and authorities supporting the prosecution's position regarding the Ordinance.

[2]"The State of California . . . shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, *possession* and transportation of alcoholic beverages within the State . . . ." (Italics added.)

thing in common, that is, that chartered counties and cities have full power to legislate in regard to municipal affairs unless: (1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.'

■ "Applying the first of the three above-mentioned criteria, we find that regulation of consumption of alcoholic beverages as distinguished from possession, transportation, etc., was, almost studiously, omitted, it seems, in article XX, section 22 of the Constitution.

"As to the second criterion, the general laws relating to the consumption of alcoholic beverages are quite selective and limited in their application and demonstrate no comprehensive scheme to prohibit the consumption of liquor in situations where such consumption could reasonably be expected to create a police problem.

"As to the third criterion, there would appear to be nothing in a municipal ordinance regulating the consumption of alcoholic beverages on streets, malls, etc., which would have any appreciable impact on the transient citizen to the degree that it would outweigh the benefit to a municipality in the control of such drinking." (*People* v. *Butler, supra,* 252 Cal.App.2d 1053 at pp. Supp. 1057-1058 [citing and quoting *In re Hubbard* (1964) 62 Cal.2d 119, 128 (41 Cal.Rptr. 393, 396 P.2d 809)].)

Almost a quarter of a century has passed with no challenge to this conclusion. Numerous subsequent decisions have cited *Butler* without a hint of criticism. (See e.g., *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 294, fn. 14 [219 Cal.Rptr. 467, 707 P.2d 840]; *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 865 [76 Cal.Rptr. 642, 452 P.2d 930]; *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121, 132 [155 Cal.Rptr. 435]; *People* v. *Robinson* (1976) 58 Cal.App.3d 363, 365 [129 Cal.Rptr. 915]; *People* v. *Orozco* (1968) 266 Cal.App.2d 507, 512 [72 Cal.Rptr. 452, 32 A.L.R.3d 1429].) Even if defendant is correct in characterizing these expressions as dicta, their unanimity evidences an approval more firmly entrenched than can be explained by the mere off-hand acceptance of an issue already decided. There seems no point in disturbing a matter so long at rest.

■ But although we agree with the trial court as to the substantive nature of the portions of the Ordinance that are and are not preempted by

state law, we dispute the conclusion that the portions cannot be uncoupled. ■ The test of "mechanical severability" requires parsing the Ordinance to delete the segments found preempted and unconstitutional in order to determine if the remaining provisions have sufficient grammatical, functional, and volitional characteristics to deserve an independent reincarnation. (See *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 821-822 [258 Cal.Rptr. 161, 771 P.2d 1247].) ■ The presence of a severability clause helps (*id.* at p. 821), but the most persuasive demonstration is also the most dramatic. As reconstructed by the District Attorney of Alameda County in the wake of the municipal court's ruling, the Ordinance would read: "No person shall drink any alcoholic beverage; (1) on any street or sidewalk; (2) while on private property open to public view without the express permission of the owner, his agent, or the person in lawful possession thereof."[3] This redacted version is capable of an independent existence. It is grammatically coherent in addressing the topic of consuming alcoholic beverages on property not owned by the consumer. It is functionally complete in that the proscribed behavior is placed in both public and private settings. There is no problem discerning what is intended. The fact that the modified version was in fact being enforced without the need for additional action by the relevant legislative authority can be seen as tacit ratification of the de facto editings by that authority. Accordingly, there is no persuasive reason to believe that the objectionable portions of the Ordinance were so crucial that enactment would not have occurred in their absence. (See *id.* at p. 822.)

As thus reconstructed, the Ordinance constituted a valid and effective statute at the time Officer Sanchez detained defendant. Sanchez was therefore entitled to use it as the basis for initiating the detention.[4] The trial court's erroneous conclusion to the contrary thus misled it in granting defendant's suppression motion.[5]

---

[3]The record includes a handwritten note by the municipal court judge indicating that "The above is an accurate statement of what was left" following his ruling.

It is important to note that the Ordinance as originally enacted was never declared unconstitutional in its entirety.

[4]The authorities dealing with good faith reliance on unconstitutional statutes cited by defendant and accepted by the trial court (i.e., *Illinois* v. *Krull* (1987) 480 U.S. 340 [94 L.Ed.2d 364, 107 S.Ct. 1160]; *Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627]), are therefore immediately distinguishable.

[5]It was not until defendant petitioned for rehearing of our initial decision and furnished a reporter's transcript, that we were made aware of what transpired at the first of the two hearings conducted on defendant's motion in the trial court. That transcript, which the parties had not designated for inclusion in the record on appeal, is now deemed an augmented part of the record. (Cal. Rules of Court, rule 12(a).)

As previously mentioned, the trial court granted the motion on the sole issue of preemption, a ground not raised by defendant in his notice of the motion. If defendant elects to renew his motion on his original grounds (cf. *People* v. *Brooks* (1980) 26 Cal.3d 471 [162 Cal.Rptr. 177,

The order of dismissal is reversed.

Perley, J., and Reardon, J., concurred.

---

605 P.2d 1306]), the matter of Officer Sanchez's testimony presented at the first hearing presents special difficulties. It should be made clear on the record whether Sanchez's testimony was authorized by the agreement of the parties, or whether he was recalled by the People. (See the third sentence of Pen. Code § 1538.5, subd. (i).) In addition, the evidentiary basis of any ruling should be made explicit in light of the limitations of subdivision (i): "The superior court shall base its ruling on all evidence presented at the special hearing and on the transcript of the preliminary hearing, and the findings of the magistrate shall be binding on the superior court as to evidence . . . not affected by evidence presented at the special hearing."